[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11772
_____

D.C. Docket No. 1:00-cr-00001-JAL-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO RAFAEL CARABALLO-MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 4, 2017)

Before HULL, MARCUS, and CLEVENGER,* Circuit Judges.

HULL, Circuit Judge:

_____

*Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal
Circuit, sitting by designation.

Pedro Caraballo-Martinez ("Caraballo") appeals the district court's denial of his renewed motion for a sentence reduction under 18 U.S.C. § 3582(c)(2).  Upon review of the record and the parties' briefs, and with the benefit of oral argument, we conclude that the district court had authority to entertain Caraballo's renewed § 3582(c)(2) motion but did not err in denying it.  Thus, we affirm.

## I.  BACKGROUND

### A.    Criminal Convictions

On December 13, 1999, Caraballo and two codefendants carried out a violent abduction and ransom scheme, kidnapping a mother and her two young children.  Caraballo, a native of Venezuela, first entered the United States in 1995 and was in this country illegally at the time of the crimes.

Specifically, Caraballo and the two other men abducted Wilma Christine Aragao, her nine-year-old son Alceau, and her one-year-old son Alexander from the parking garage at the condominium building where the family lived.[1]  The men used a stun gun to incapacitate Mrs. Aragao and Alceau.  The violent struggle caused Mrs. Aragao to drop her infant son onto the parking garage's concrete floor, causing him to suffer bruises and lacerations on his face.

Caraballo and a codefendant then viciously beat Mrs. Aragao.  According to medical records, Mrs. Aragao's cheekbone was fractured in three places, her jaw

---

[1]The facts underlying Caraballo's crimes of conviction were detailed in his presentence investigation report ("PSI"), and the district court adopted those facts at sentencing.

bone was pushed into her face so as to become painful and difficult to move, and her right eye socket was completely shattered, causing an internal hemorrhage in that area of her face. Mrs. Aragao also suffered nerve damage in her right eye socket, resulting in a lack of sensation to this part of her face and an inability to fully open her right eye. She suffered multiple additional lacerations to her face during the beating and "countless" burn marks and bruises to her upper torso from repeated application of the stun gun.

Caraballo and the two other assailants then took Mrs. Aragao and her two young sons to a rented house, where the mother was separated from her sons. The assailants tied Mrs. Aragao to a lawn chair, blindfolded her, stuffed a piece of cloth in her mouth, and put her in a bedroom closet. The men restrained the nine-year-old, Alceau, in a similar fashion and put him in another bedroom closet. While tied up in the dark closet, Mrs. Aragao could hear her two young children crying.

The assailants forced Mrs. Aragao to write a letter to her husband requesting a $70,000 ransom. She also called her husband multiple times, at the kidnappers' instruction, to convey instructions from them. Law enforcement officers eventually traced these calls to the rented house where the victims were being kept and rescued them on December 17, 1999, after being held hostage for four days. Caraballo was arrested during the rescue.

On June 2, 2000, after a 16-day trial, a jury convicted Caraballo and his two codefendants of: (1) conspiracy to commit hostage taking, in violation of 18 U.S.C. § 1203(a) (Count 1); (2) hostage taking, in violation of 18 U.S.C. § 1203(a) (Count 2); (3) conspiracy to commit carjacking, in violation of 18 U.S.C. §§ 371, 2119 (Count 3); (4) carjacking, in violation of 18 U.S.C. § 2119(2) (Count 4); and (5) using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 5).

## B.    Original Sentence

The presentence investigation report ("PSI") assigned Caraballo a total offense level of 43 and a criminal history category of I, resulting in an advisory Guidelines sentence of life imprisonment.  The total offense level of 43 included a base offense level of 24 and these increases: (1) six levels because a ransom demand was made, under U.S.S.G. § 2A4.1(b)(1); (2) four levels because the victim (Mrs. Aragao) sustained permanent or life-threatening bodily injury, under § 2A4.1(b)(2); (3) two levels because a dangerous weapon was used, under § 2A4.1(b)(3); (4) two levels because the defendant knew or should have known that the victim was vulnerable, under § 3A1.1(b)(1); (5) two levels for obstruction of justice, under § 3C1.1; and (6) three levels under the multiple-count adjustment.

Caraballo made written objections to the PSI, including objections to the enhancements for demanding a ransom, victim injury, and obstructing justice.

4

Caraballo's sentencing hearing, conducted jointly with his codefendants, began on August 29, 2000, and took place over three days. The district court heard argument on, and ultimately overruled, each of Caraballo's written objections. One of Caraballo's codefendants raised a new objection—that the two-level enhancement for the use of a dangerous weapon under U.S.S.G. § 2A4.1(b)(3) was inappropriate in light of the five-year consecutive sentence for the 18 U.S.C. § 924(c) firearm conviction. The district court overruled the objection, finding that the § 2A4.1(b)(3) enhancement was "appropriate" as to all three codefendants.

The district court adopted the PSI's factual findings and Guidelines calculations with respect to Caraballo. It then determined that Caraballo's Guidelines sentence was life imprisonment. The district court stated that it had considered the parties' statements, the PSI, the victims' statements, and the evidence presented at the sentencing hearing. The district court then sentenced Caraballo to life imprisonment on Counts 1 and 2, 60 months on Count 3, 300 months on Count 4, all to run concurrently, and 60 months on Count 5, to run consecutively.[2]

---

[2]Counts 1 and 2 carried statutory maximum terms of life imprisonment, while Count 3 carried a statutory maximum of five years' imprisonment and Count 4 carried a statutory maximum term of 25 years' imprisonment. Thus, the advisory Guidelines range for Counts 3 and 4 were capped at their respective statutory maximums. Similarly, Count 5 had an advisory Guidelines range of five years, to run consecutively.

## C.    Direct Appeal

On direct appeal in 2001, this Court affirmed Caraballo's and his codefendants' convictions and sentences.  United States v. Ferreira, 275 F.3d 1020, 1030 (11th Cir. 2001).  On appeal, Caraballo challenged certain aspects of his sentence (e.g., the six-level increase for a ransom demand), but he did not challenge the two-level increase for use of a dangerous weapon under U.S.S.G. § 2A4.1(b)(3).  See id. at 1022 & n.1.  The United States Supreme Court denied Caraballo's petition for a writ of certiorari.  Caraballo-Martinez v. United States, 537 U.S. 926, 123 S. Ct. 321 (2002).

## D.    Retroactive Application of Amendment 599

As of November 1, 2000, the United States Sentencing Commission adopted Amendment 599 to the Sentencing Guidelines.  U.S.S.G. App. C, Vol. II, Amend. 599.  Amendment 599 changed the language in the application note for U.S.S.G. § 2K2.4, the relevant Sentencing Guideline for convictions under 18 U.S.C. § 924(c).  Id.  The amended language clarified that when a defendant is convicted and sentenced under § 924(c), the defendant cannot also receive a Guideline enhancement for use of a weapon during the commission of the underlying offense. Id. ("If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of . . . [a] firearm when determining the

6

sentence for the underlying offense."); see also United States v. Brown, 332 F.3d 1341, 1344-45 (11th Cir. 2003) (acknowledging and explaining Amendment 599). Amendment 599 was made to apply retroactively.  U.S.S.G. § 1B1.10(d).

On October 10, 2014, Caraballo filed a pro se motion for sentence reduction under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment 599.  Caraballo pointed out that the application of Amendment 599 would reduce his total offense level from 43 to 41, resulting in an advisory Guidelines range of 324 to 405 months' imprisonment, instead of life, on Counts 1 and 2.

### E.    July 10, 2015 Order Denying First § 3582(c)(2) Motion

In a July 10, 2015 order, the district court concluded that Caraballo was eligible for relief under Amendment 599 and that it had discretion to reduce Caraballo's sentence.  The district court then decided that, in its discretion, the 18 U.S.C. § 3553(a) factors did not warrant a sentence reduction, and it denied Caraballo's § 3582(c)(2) motion.

The district court pointed out that Caraballo had "participated in a heinous and brutal crime that involved serious physical violence against a mother and two of her children."  The district court determined that Caraballo's life sentence "is necessary to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment . . . [, and] to adequately deter similar criminal conduct and to protect the public."  The district court took Caraballo's post-

7

conviction good conduct into consideration but found it "wholly insufficient to justify a reduction in sentence" given that Caraballo "continues to evade any substantial responsibility for the horrific crime and continues to express[] little remorse for the harm that he has caused."

Caraballo did not appeal the denial of his initial § 3582(c)(2) motion.

**F.     October 20, 2015 Renewed § 3582(c)(2) Motion**

On October 20, 2015, three months after the denial of his first § 3582(c)(2) motion, Caraballo, through counsel, filed a "renewed" motion for sentence reduction based on Amendment 599. Caraballo included a signed personal statement expressing his remorse and accepting responsibility for his actions. Caraballo asked for an evidentiary hearing to "properly determine the sincerity of his remorse."

The government opposed Caraballo's renewed § 3582(c)(2) motion, arguing that it (1) was barred by the law-of-the-case doctrine and (2) was filed more than three months after the district court denied his first § 3582(c)(2) motion and was thus untimely under the 14-day time limit in Federal Rule of Criminal Procedure 35 ("Rule 35(a)").

On April 11, 2016, the district court denied Caraballo's renewed § 3582(c)(2) motion. The district court reasoned (1) that its July 10, 2015 denial of Caraballo's first § 3582(c)(2) motion was a decision on the merits, (2) that the

order therefore constituted a "resentencing," (3) that Rule 35(a)'s 14-day time limit applied, and (4) that Caraballo's renewed challenge to the sentence was procedurally barred under Rule 35(a) and this Circuit's precedent in United States v. Phillips, 597 F.3d 1190 (11th Cir. 2010) and United States v. Anderson, 772 F.3d 662 (11th Cir. 2014).  Because Caraballo's renewed motion was filed 102 days, not 14 days, after the first § 3582(c)(2) order, the district court concluded it lacked the authority to consider it.

Alternatively, the district court held that, even if it did have the authority to consider Caraballo's renewed § 3582(c)(2) motion, and even after considering Caraballo's newly raised expressions of remorse, it would impose the same sentence of life imprisonment for the reasons detailed in its July 10, 2015 order. The district court reasoned, in part:

> Having considered Defendant's expression of remorse – which relates to his history and characteristics – and having weighed all of the remaining § 3553(a) factors, the Court finds that Defendant's sentence of life is sufficient, but not greater than necessary, to reflect the seriousness of the offense (which was heinous), promote respect for the law, provide just punishment of the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational, training, medical care or other correctional treatment.

Caraballo timely appealed.

## II.  STANDARDS OF REVIEW

"In a § 3582(c)(2) proceeding, we review <u>de novo</u> the district court's legal conclusions regarding the scope of its authority under the Sentencing Guidelines. We review <u>de novo</u> questions of statutory interpretation." <u>Phillips</u>, 597 F.3d at 1194 n.9 (quoting <u>United States v. Moore</u>, 541 F.3d 1323, 1326 (11th Cir. 2008)). If § 3582(c)(2) applies, we review a district court's decision to grant or deny a sentence reduction only for abuse of discretion. <u>United States v. Hamilton</u>, 715 F.3d 328, 337 n.8 (11th Cir. 2013).

## III.  SECTION 3582(c)

As background, we first discuss § 3582(c) in general and the limits of a § 3582(c)(2) proceeding.  As explained in <u>Phillips</u>, § 3582(c) provides that a federal court "may not modify a term of imprisonment once it has been imposed," except in these limited circumstances:

> (1) where the Bureau of Prisons has filed a motion and either extraordinary and compelling reasons warrant a reduction or the defendant is at least 70 years old and meets certain other requirements, <u>see</u> 18 U.S.C. § 3582(c)(1)(A); (2) where another statute or Federal Rule of Criminal Procedure 35 expressly permits a sentence modification, <u>see</u> <u>id.</u> § 3582(c)(1)(B); or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the Commission and certain other requirements are met, <u>see</u> <u>id.</u> § 3582(c)(2).

597 F.3d at 1195 (citing 18 U.S.C. § 3582(c)).[3]

---

[3]Section § 3582(c) provides in full:

This case involves the last of these exceptions—a district court's limited authority under § 3582(c)(2) to reduce a term of imprisonment "where a defendant has been sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the [Sentencing] Commission and certain other requirements are met."  Id. (citing 18 U.S.C. § 3582(c)(2)).

The Supreme Court in Dillon v. United States clarified how § 3582(c)(2) provides only a narrow exception to the general rule of finality.  See Dillon v. United States, 560 U.S. 817, 824-28, 130 S. Ct. 2683, 2690-92 (2010).  "By its

---

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that--

**(1)** in any case--

    **(A)** the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

        **(i)** extraordinary and compelling reasons warrant such a reduction; or

        **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

    **(B)** the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

**(2)** in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the 'modification of a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." Id. at 825, 130 S. Ct. at 2690 (alterations omitted). The Supreme Court explained that the statute's text, "together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." Id. at 826, 130 S. Ct. at 2691. Thus, the Supreme Court explained that "a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense." Id. at 827, 130 S. Ct. at 2691.

Further, under § 3582(c)(2), "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(2). "Any [§ 3582(c)(2)] reduction must be consistent with applicable policy statements issued by the Sentencing Commission." Dillon, 560 U.S. at 821, 130 S. Ct. at 2688 (citing 18 U.S.C. § 3582(c)(2)). The Supreme Court in Dillon also concluded that, because § 3582(c)(2) "sentence-modification proceedings . . . are not constitutionally compelled," those proceedings "do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt." Id. at 828, 130 S. Ct. at 2692.

12

Finally, because § 3582(c)(2) only authorizes the reduction of sentences that are "based on a sentencing range that has subsequently been lowered," if a defendant receives a sentence modification under § 3582(c)(2), subsequent reduction based on the same amendment to the Guidelines is not available—the modified sentence is no longer based on the outdated Guidelines range.

With this background about § 3582(c)(2), we turn to Rule 35(a).

## IV.  RULE 35(a), <u>PHILLIPS</u>, AND <u>ANDERSON</u>

Rule 35(a) provides: "Within 14 days after <u>sentencing</u>, the court may correct <u>a sentence</u> that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a) (emphasis added).  The upshot of this rule is that, when no other statutory exception to sentence finality applies, a court may modify a sentence only within 14 days after sentencing.  The threshold question here is whether the 2015 denial of Caraballo's initial § 3582(c)(2) motion constituted a "sentencing"[4] and "a sentence" for the purposes of Rule 35(a) and § 3582(c)(2).  If it was, then Caraballo's renewed § 3582(c)(2) motion was untimely under Rule 35(a)'s 14-day time limit, and the district court did not otherwise have authority to consider it.  If it wasn't, then Rule 35(a) did not apply, and § 3582(c)(2) provided the district court with statutory authority to consider the motion.

_____

[4]The rule defines "sentencing" as "the oral announcement of the sentence." Fed. R. Crim. P. 35(c).  While the district court did not make an oral announcement of its decision on Caraballo's initial § 3582(c)(2) motion or even hold a hearing, we have held that, under such circumstances, "the imposition of the [new] sentence occurred . . . when the district court's written order was entered."  <u>See</u> <u>Phillips</u>, 597 F.3d at 1199 n.20.

13

As to what constitutes a "sentencing" or "a sentence" for these purposes, both Caraballo and the government rely on our prior decisions in Phillips and Anderson but read them differently.  We examine those two decisions in detail.

## A.    Phillips and Rule 35(a)

In Phillips, on December 5, 2008, the district court granted the defendant Phillips's § 3582(c)(2) motion based on Amendment 715 to the Guidelines and reduced Phillips's sentence from 360 months to 324 months' imprisonment on his drug convictions.  597 F.3d at 1191-92.  The district court did not change Phillips's consecutive 60-month prison sentence on his firearms conviction.  Id. Undisputedly, though, in reducing Phillips's imprisonment from 360 to 324 months, the district court imposed a different sentence.

On December 19, 2008, ten business days later, the government filed a motion for reconsideration, pointing out that the district court had used the Guidelines from the wrong year and that, under the correct Guidelines, Phillips's original Guidelines range had not changed or been lowered.  Id. at 1193.  Notably, the motion at issue in Phillips was filed by the government to correct a clear error. The motion was not filed by the defendant seeking to reduce his sentence further.

14

On January 26, 2009, the district court recognized its clear error,[5] granted the government's motion, set aside its December 5 order reducing Phillips's sentence to 324 months, and stated that Phillips's "original sentence of 360 months imprisonment, with a consecutive term of 60 months, therefore remains in place as imposed at his 1989 sentencing." Id. at 1193-94.

Reversing that grant of the government's motion, this Court held that the district court's imposition of a different 324-month sentence on December 5 was a "sentencing," that Rule 35(a) applied to that sentencing, that the government's December 19 motion for reconsideration was not filed within Rule 35(a)'s seven-day time limit,[6] and, thus, that the district court "lacked jurisdiction" to vacate its December 5 order reducing Phillips's sentence to 324 months. Id. at 1197-99.

In considering the government's motion to correct a clear error and modify the sentence back up to 360 months, the Phillips Court looked to § 3582(c)(1)(B), which allows a court to modify an imposed term of imprisonment to the extent "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Id. at 1195 (quoting 18 U.S.C. § 3582(c)(1)(B)). The Phillips Court determined that the "unambiguous language of § 3582(c)(1)(B) indicates that,

---

[5]In Phillips, none of the parties disputed that the district court used the wrong year of the Guidelines and clearly erred in imposing the new 324-month sentence on December 5, 2008. 597 F.3d at 1194.

[6]An older version of Rule 35(a) provided only a seven-day window to correct a sentence. The rule was amended in 2009 to provide for a fourteen-day time limit. Phillips, 597 F.3d at 1196 n.11.

15

absent other express statutory authority, modification of an imprisonment sentence can only be done pursuant to Rule 35." Id.  In Phillips, this Court explained that "[n]o party claims any other statutory authority is applicable here" and thus "we focus on Rule 35." Id.

As to Rule 35(a), the Phillips Court concluded: (1) that Rule 35(a) "significantly restricts how and when a district court may modify an imprisonment sentence"; (2) that "under Rule 35(a), a court can correct a sentence only for 'arithmetical, technical, or other clear error'"; and (3) that the district court "must do so within seven days." Id. at 1195-96 (quoting Fed. R. Crim. P. 35(a)).

Further, the Phillips Court said the seven-day time limit in Rule 35(a) is "jurisdictional." Id. at 1196 (citing United States v. Diaz-Clark, 292 F.3d 1310, 1319 (11th Cir. 2002)).  Therefore, "a court's modification of a sentence outside of this seven-day period is an action taken without the requisite jurisdiction, and is a legal nullity." Id. at 1197 (quoting Diaz-Clark, 292 F.3d at 1317).

The Phillips Court then tackled the "pivotal issue" in that case—whether the time limit in Rule 35(a) may apply not only to an original sentencing proceeding but also to a different sentence imposed in a § 3582(c)(2) proceeding. Id.  This Court held that, "[w]hile a § 3582(c)(2) proceeding is not a plenary or de novo sentencing, it is still a sentencing proceeding" because a district court considering a § 3582(c)(2) motion will look at similar § 3553(a) factors and undertake a similar

16

analysis to that used during a plenary sentencing.  Id. at 1198.  Therefore, the Phillips Court narrowly ruled that "if a district court grants a defendant's § 3582(c)(2) motion, modifies the original sentence, and imposes a different term of imprisonment, the district court is again 'sentencing' the defendant."  Id. at 1199 (emphasis added).  "A sentencing, whether imposing the initial sentence or a subsequent different sentence, is a sentencing."  Id. (emphasis added).

Because the December 5 order granted Phillips's § 3582(c)(2) motion and imposed a different sentence (324 months instead of 360), the Phillips Court concluded: (1) that the December 5 order was a "sentencing" with a different "sentence"; (2) that the seven-day time limit in Rule 35(a) applied; and (3) that the district court lacked jurisdiction to grant the government's December 19 motion to correct the clear error and modify Phillips's 324-month sentence back up to 360 months.  Id.

Importantly for Caraballo's case, Phillips involved only the factual situation in which a district court granted a § 3582(c)(2) motion on the merits and imposed a new sentence with a different term of imprisonment.  We next turn to Anderson, which involved the factual situation of a denial of a defendant's § 3582(c)(2) motion, where this Court distinguished Phillips and held that the denial was not a new sentence or sentencing, and thus that neither the time limit in Rule 35(a) nor

17

any other statutory restriction applied to bar the defendant's subsequent successive § 3582(c)(2) motion.

## B.    Anderson and Rule 35(a)

In Anderson, in 2011, the district court denied Anderson's § 3582(c)(2) motion to reduce his sentence because Guidelines Amendment 750 did not lower his applicable Guidelines range of 360 months to life imprisonment.[7]  772 F.3d at 665.  On appeal, this Court affirmed, concluding that Amendment 750 did not lower Anderson's Guidelines range because his drug convictions involved at least 15 kilograms of crack cocaine, but Amendment 750 only increased the minimum amount of crack cocaine necessary to receive a base offense level of 38 from 4.5 kilograms to 8.4 kilograms.  Id.

Two years later, in 2013, Anderson filed a renewed § 3582(c)(2) motion based on Amendment 750, which the district court also denied, finding "no change in circumstance" since its previous ruling that Amendment 750 did not lower his Guidelines range.  Id. at 665.  Anderson appealed again.  Id.

---

[7]In Anderson, the defendant's base offense level was 42 because his drug offenses involved more than 15 kilograms of crack cocaine.  Anderson, 772 F.3d at 664.  After a four-level enhancement, his total offense level of 46 and a criminal history category of III yielded an advisory Guidelines range of life imprisonment.  Id.  The district court sentenced Anderson to life imprisonment.  Id.

In 2006, Anderson filed a § 3582(c)(2) motion based on Amendment 505, which lowered his base offense level to 38, his total offense level to 42, and his Guidelines range to 360 months to life imprisonment.  Id.  The district court determined life imprisonment remained appropriate.  Id.  In 2008, Anderson filed a § 3582(c)(2) motion based on Amendment 706, but even with that amendment, Anderson's Guidelines range remained 360 months to life imprisonment.  Id. at 664-65.

18

On appeal, this Court held that the district court had jurisdiction in 2013 to consider Anderson's renewed § 3582(c)(2) motion because the earlier 2011 denial was not a new sentence but a "procedural denial," and thus that the 2011 denial did not trigger the 14-day time limit in Rule 35(a) or otherwise deprive the district court of jurisdiction to consider a successive § 3582(c)(2) motion. Id. at 667-68.

The Anderson Court distinguished the grant of a § 3582(c)(2) motion in Phillips from the procedural denial in Anderson. Id. The Anderson Court said that where the district court denies a § 3582(c)(2) motion because the Guidelines amendment does not lower the defendant's Guidelines range in the first place, the denial is merely "procedural." Id. In such procedural denials, "there is no new sentence because the statute does not give the district court jurisdiction to modify a defendant's sentence." Id. at 668 (emphasis added).

The Anderson Court reasoned that the district court's 2011 denial of Anderson's first § 3582(c)(2) motion was merely a procedural denial because the district court had determined that Amendment 750 did not lower Anderson's Guidelines range. Id. And "because Anderson's motion was not granted . . . he has not been newly sentenced pursuant to § 3582(c)(2)." Id. at 667. The Anderson Court concluded that because it was a procedural denial with no new sentence, instead of a grant, "Phillips does not apply . . . , and the district court's jurisdiction

19

[in 2013] was not limited by the strictures of [Rule 35(a)] after it entered the first order." Id. at 668.

In addition to determining that Rule 35(a) did not apply to such procedural denials, the Anderson Court also examined whether there were any statutory restrictions on filing successive § 3582(c)(2) motions based on the same Guidelines amendment. Id. at 666-67. In Anderson, this Court rejected the government's argument that a federal prisoner may bring only one motion under § 3582(c)(2) based on the same Guidelines amendment. Id. The Anderson Court expressly held that "§ 3582(c)(2) contains no language that places a limitation on the district court's jurisdiction to consider successive motions based on the same amendment to the Sentencing Guidelines." Id. at 667. "Thus, because there is no clearly expressed jurisdictional limitation on a district court's ability to hear successive motions based on the same amendment, this Court holds that it would be improper to read one into the [§ 3582(c)(2)] statute." Id. In addition, Anderson said: "[F]or whatever other restrictions may be placed on the district court's ability to consider a successive motion based on the same amendment, none of these potential restrictions are articulated in jurisdictional terms in the statute itself." Id.

Having concluded that the district court had jurisdiction to consider the renewed § 3582(c)(2) motion in 2013, this Court in Anderson turned to whether the law-of-the-case doctrine nevertheless applied to bar Anderson's renewed

20

§ 3582(c)(2) motion based on the same Amendment 750. <u>Id.</u> at 668. As explained in <u>Anderson</u>, the law-of-the-case doctrine "provides that 'an appellate decision binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal.'" <u>Id.</u> (alteration omitted) (citing 18B Wright, Miller & Cooper, Federal Practice & Procedure § 4478, at 668-70 (2d ed. 2002)). The <u>Anderson</u> Court recognized that "the law-of-the-case doctrine may be raised by the court <u>sua sponte</u>." <u>Id.</u> at 668-69. The law-of-the-case doctrine is an "important feature" in fulfilling the courts' "compelling interest in continuity, finality, and efficiency both within cases and within the greater judicial system." <u>Id.</u> Under the law-of-the-case doctrine, the previous findings of fact and conclusions of law decided in Anderson's first appeal would be binding and constitute the law of the case in Anderson's subsequent § 3582(c)(2) proceeding based on Amendment 750. <u>Id.</u>

This Court also noted that one exception to the law-of-the-case doctrine is where the earlier appellate decision was clearly erroneous and would create a manifest injustice. <u>Id.</u> While acknowledging that the district court erred in failing to properly use certain drug equivalency tables, the <u>Anderson</u> Court concluded "there is no manifest injustice to be found" because Amendment 750 "did not affect Anderson's base offense level" and, thus, "any error on the part of the district court was harmless." <u>Id.</u> at 669-70. For these reasons, this Court affirmed

21

the district court's order denying Anderson's renewed § 3582(c)(2) motion.  Id. at 670.

We would stop our discussion here but for some dicta in Anderson we must also address.

## V.  DICTA IN ANDERSON

In dicta, the Anderson Court not only distinguished the grant of a different sentence in Phillips but also ventured further to discuss what it termed a "denial on the merits."  Id. at 667.  The Anderson Court defined a "denial on the merits" as when an amendment does lower a defendant's Guidelines range but the district court denies the § 3582(c)(2) motion "based on various factors."  Id. at 667-68.  As to such "denial[s] on the merits," the Anderson Court then discussed whether the Phillips holding—that Rule 35(a) provided the only authority for modifying a grant resulting in a different sentence—"also extends to cases in which the district court denies a defendant's § 3582(c)(2) motion on the merits after considering the § 3553(a) factors."  Id. at 667.

The Anderson Court stated that "[a] district court's denial on the merits is still, in essence, a new sentence, because in these cases the district court recognizes that the relevant Sentencing Guidelines [a]mendment applies to the defendant to reduce his [G]uidelines range, yet chooses to resentence the defendant to the same term of imprisonment after considering various factors."  Id. (emphasis added).

After stating that a merits denial is "in essence, a new sentence," the <u>Anderson</u> Court added: "Thus, the district court's authority to consider a defendant's successive motion is likewise limited in this circumstance to Rule 35(a)'s fourteen-day time limitation." <u>Id.</u>

The government claims <u>Anderson</u> controls Caraballo's case because the district court denied his § 3582(c)(2) motion on the merits. The government relies on <u>Anderson</u>'s statement that "a district court's denial on the merits is still in essence, a new sentence" that is "limited" by Rule 35(a)'s 14-day time limit. Caraballo argues that this statement in <u>Anderson</u> is pure <u>obiter dictum</u> because <u>Anderson</u> involved only a procedural denial of a § 3582(c)(2) motion and did not involve a denial on the merits.

Of course, if that statement was part of <u>Anderson</u>'s holding, the prior panel precedent rule would compel us to follow it. <u>See</u> <u>United States v. Hunter</u>, 172 F.3d 1307, 1310 (11th Cir. 1999) (Carnes, J., concurring). Conversely, if this language was dicta, we would not be bound by it. <u>See, e.g.</u>, <u>McNely v. Ocala Star-Banner Corp.</u>, 99 F.3d 1068, 1077 (11th Cir. 1996) ("[W]e are not required to follow dicta contained in our own precedents.").

Further, "dicta is defined as those portions of an opinion that are not necessary to deciding the case then before us." <u>United States v. Kaley</u>, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (internal quotation marks omitted). The holding

23

of a case comprises both "the result of the case and those portions of the opinion necessary to that result." Id. (internal quotation marks omitted). But the "holding" of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision. United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (per curiam); see also Edwards v. Prime, Inc., 602 F.3d 1276, 1298 (11th Cir. 2010) ("We have pointed out many times that regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case.") (collecting cases).

We agree with Caraballo that Anderson's statement—about a denial of a § 3582(c)(2) motion on the merits—is dicta. The facts of Anderson involved only a procedural denial of a § 3582(c)(2) motion where the district court concluded that a Guidelines amendment did not lower the defendant's Guidelines range and that it therefore lacked statutory authority under § 3582(c)(2) to modify the original sentence at all. 772 F.3d at 665. The Anderson Court itself said that such procedural denials do not impose a new sentence that would be subject to Rule 35(a). Id. at 667-68.

As explained above, Anderson did discuss the different factual situation where the district court concludes that an amendment does lower the defendant's Guidelines range and the district court has statutory authority to reduce a sentence, but the district court still denies the § 3582(c)(2) motion to reduce a sentence based

24

on the § 3553(a) factors.  As noted, the Anderson Court described that different factual situation as a "denial on the merits."  Id. at 667.  While Anderson contrasted those two factual situations, Anderson's statement about whether such a denial "on the merits" would be "in essence, a new sentence" is pure dicta.  See id.  That factual situation and legal question were not before the Anderson Court, and its volunteered answer to that question was not necessary to its holding.  Rather, Anderson's holding was only that a procedural denial—where the district court finds that an amendment does not lower the defendant's Guidelines range—is not a new sentence for purposes of Rule 35(a)'s time limit and § 3582(c)(2).  Id. at 668.

Having determined that our existing precedent does not bind us, we turn to whether the denial of Caraballo's first § 3582(c)(2) motion, albeit on the merits, was a "sentencing" or "a sentence" for purposes of Rule 35(a) and § 3582(c)(2).

## VI.  DISTRICT COURT HAD AUTHORITY TO CONSIDER THE RENEWED § 3582(c)(2) MOTION

For several reasons, we conclude that under the facts and circumstances here (1) the district court's denial of Caraballo's first § 3582(c)(2) motion on the merits did not produce a different sentence, or even re-impose the original sentence, and (2) the district court thus had authority to consider Caraballo's renewed § 3582(c)(2) motion based on the same Guidelines amendment.

First, there is no express jurisdictional limitation prohibiting Caraballo's renewed § 3582(c)(2) motion.  The statute itself does not prohibit successive

25

§ 3582(c)(2) motions.  As <u>Anderson</u> concluded, § 3582(c)(2) "contains no language that places a limitation on the district court's jurisdiction to consider successive motions based on the same amendment to the Sentencing Guidelines." 772 F.3d at 667.  <u>Anderson</u> held that it would be improper to read a jurisdictional limitation on successive motions into the § 3582(c)(2) statute.  <u>Id.</u>

<u>Anderson</u> is consistent with Supreme Court precedent that requires Congress to "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional" before a court can treat the limitation as such.  <u>See</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 515–16, 126 S. Ct. 1235, 1245 (2006).  Recognizing this "bright line" test, other circuits have similarly held that the § 3582(c)(2) statute does not contain an explicit jurisdictional limitation on successive § 3582(c)(2) motions based on the same amendment.  <u>See</u> <u>United States v. May</u>, 855 F.3d 271, 274-75 (4th Cir. 2017); <u>United States v. Taylor</u>, 778 F.3d 667, 670 (7th Cir. 2015);[8] <u>United States v. Trujillo</u>, 713 F.3d 1003, 1006-07 (9th Cir. 2013); <u>United States v. Weatherspoon</u>, 696 F.3d 416, 421-22 (3d Cir. 2012).

While <u>Anderson</u> concluded that the § 3582(c)(2) statute does not contain an express jurisdictional limitation on successive § 3582(c)(2) motions based on the same amendment, the Court in <u>Anderson</u> did implicitly use another type of

---

[8]Although the Fourth and Seventh Circuit courts have ruled that there is no explicit jurisdictional limitation in § 3582(c)(2) and that district courts have subject matter jurisdiction to consider successive § 3582(c)(2) motions, both circuits have concluded that there are other potential non-jurisdictional limitations on successive § 3582(c)(2) motions, which we discuss later.

26

restriction—the law-of-the-case doctrine—to affirm the denial of a successive

§ 3582(c)(2) motion based on the same amendment.  <u>Anderson</u>, 772 F.3d at 668-

70.  Here though, Caraballo did not appeal the denial of his first § 3582(c)(2)

motion, and thus there is no prior appellate ruling that triggers the law-of-the-case

doctrine here.  Further, the government does not make a law-of-the-case argument

on appeal.

Second, Rule 35(a) does not apply to the denial of Caraballo's first

§ 3582(c)(2) motion and did not limit the district court's authority to consider

Caraballo's renewed § 3582(c)(2) motion.  Although Amendment 599 lowered

Caraballo's Guidelines range to 324 to 405 months' imprisonment instead of life

on Counts 1 and 2, the district court declined to exercise its discretion to reduce

Caraballo's original sentence, based on its evaluation of the § 3553(a) factors.  As

Caraballo emphasizes, in the adjudication of his first § 3582(c)(2) motion, there

was never a written pronouncement of a sentence or even a reiteration of the

previously imposed sentence.  Rather, Caraballo aptly points out what the district

court said in its order denying Caraballo's first § 3582(c)(2) motion:

> Accordingly, it is **ORDERED and ADJUDGED** that Defendant's
> Motion for Retroactive Sentence Reduction Pursuant to Title 18
> U.S.C. § 3582(c)(2) and Amendment 599 to the United States
> Sentencing Guidelines (D.E. 351) is **DENIED.**

Therefore, the life imprisonment sentence that Caraballo is serving is the one

originally imposed upon him when he was convicted.  That sentence was not

27

modified by the district court in response to Caraballo's first § 3582(c)(2) motion. The denial here meant only that the sentence imposed at the time of conviction continued and was not reduced. Cf. Phillips, 597 F.3d at 1199 (holding that "if a district court grants a defendant's § 3582(c)(2) motion, modifies the original sentence, and imposes a different term of imprisonment, the district court is again 'sentencing' the defendant").

To construe the particular ruling in Caraballo's case as a "sentencing" or the imposition of "a sentence" for purposes of Rule 35(a) and § 3582(c)(2) is neither a reasonable interpretation of Rule 35(a) nor a reasonable description of what happened with respect to Caraballo's first § 3582(c)(2) motion. In addition, the Supreme Court emphasized in Dillon the limited scope of § 3582(c)(2) proceedings and that "a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense." Dillon, 560 U.S. at 827, 130 S. Ct. at 2691. This is a further reason why we conclude that the denial of Caraballo's first § 3582(c)(2) motion was not a "sentencing" or "a sentence" for purposes of Rule 35(a) and § 3582(c)(2) and thus that denial did not trigger the 14-day time limit in Rule 35(a) or jurisdictionally bar the court from considering a successive § 3582(c)(2) motion.[9]

---

[9]Although the Seventh Circuit held there is no express jurisdictional limitation in the § 3582(c)(2) statute, the Seventh Circuit also concluded that federal prisoners have only one opportunity, or "one bite at the apple," to request a sentence modification based on the same

Before concluding, we point out what we do not decide here. The government has argued only that the district court lacked jurisdiction to consider Caraballo's successive § 3582(c)(2) motion based on the same Guidelines amendment. For the reasons outlined above, we reject that argument. In this appeal, the government has not argued that other non-jurisdictional restrictions might limit a successive or renewed § 3582(c)(2) motion based on the same Guidelines amendment.

For completeness, we note that the Fourth Circuit has concluded that there is a non-jurisdictional "implied prohibition" of motions for reconsideration of a prior

---

Guidelines amendment. United States v. Beard, 745 F.3d 288, 292 (7th Cir. 2014) (stating "[i]n other words, prisoners have only one bite at the apple per retroactive amendment"). The Beard defendant in 2008 filed a § 3582(c)(2) motion based on the Guidelines amendment lowering certain crack cocaine offense levels. Id. at 290. The district court denied that § 3582(c)(2) motion because Beard was sentenced to a ten-year statutorily mandated minimum that had not changed. Id. In 2012, Beard filed his second § 3582(c)(2) motion requesting that the district court sentence him under the Fair Sentencing Act's new mandatory minimums. The district court denied Beard's § 3582(c)(2) motion. He filed a motion for reconsideration, which was also denied. Id.

The denial of the motion for reconsideration was the sole basis for Beard's appeal. Id. at 291. In addition to its "one bite at the apple" ruling, the Seventh Circuit said Beard's motion for reconsideration was "nothing more in substance than a renewed motion under § 3582(c)(2)." Id. And "[o]nce the district judge makes a decision, Rule 35 applies and curtails any further power of revision, unless the Commission again changes the Guidelines and makes that change, too, retroactive." Id. at 292. Although the Seventh Circuit cited Rule 35, there was no analysis of Rule 35(a)'s language or why it applied. The Seventh Circuit appears instead to be imposing a non-jurisdictional case processing rule as to successive § 3582(c)(2) motions. See id. at 291 (stating that Beard presented the question of whether § 3582(c)(2) contains a jurisdictional bar on successive motions or if the statute "imposes only a non-jurisdictional case processing rule"). We note that if Rule 35 applies to a denial of a prior § 3582(c)(2) motion, it would in fact give a second bite at the apple, if the bite is taken within 14 days.

In any event, as we explain later, there are non-jurisdictional limitations on successive or renewed § 3582(c)(2) motions, but we narrowly rule here that there is no jurisdictional limitation when a district court denies, as opposed to grants, an initial § 3582(c)(2) motion and does not impose a different sentence.

denial of a § 3582(c)(2) motion.  May, 855 F.3d at 275 (stating that § 3582(c)(2) does not expressly authorize or prohibit a motion for reconsideration in § 3582(c)(2) cases but concluding that an "implied prohibition" exists).[10]

Although the Fourth Circuit agrees that there is no express jurisdictional limitation in the § 3582(c)(2) statute, the Fourth Circuit has concluded that "the clear intent of § 3582 [is] to constrain postjudgment sentence modifications."  Id. (quoting United States v. Goodwyn, 596 F.3d 233, 236 (4th Cir. 2010)).  Given "§ 3582(c)(2)'s silence on a district court's authority to grant motions for reconsideration, coupled with sentence finality interests," the Fourth Circuit stated that this "implied prohibition" is "non-jurisdictional and thus subject to waiver." Id.; see also Goodwyn, 596 F.3d at 235-36 (construing a successive § 3582(c)(2) motion as a "motion for reconsideration" and reversing the district court's grant of the "motion for reconsideration" of a prior grant of a § 3582(c)(2) motion because § 3582(c)(2) does not authorize motions for reconsideration).  The government has not asked that we construe Caraballo's renewed § 3582(c)(2) motion as a motion

---

[10]The Fourth Circuit cites Anderson and Beard as also comporting with its "implied prohibition" ruling in May.  See 855 F.3d at 275.  But Beard involved Rule 35, and Anderson's holding permitted a successive § 3582(c)(2) motion where the district court's denial of the first § 3582(c)(2) motion was deemed a procedural denial.  We do not read these two decisions the way the Fourth Circuit did in May.

for reconsideration and has not made the arguments addressed by the Fourth

Circuit in May, and thus we do not address or decide them either.[11]

## VII.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING CARABALLO'S RENEWED § 3582(c)(2) MOTION

Because the district court had authority to rule on Caraballo's renewed

§ 3582(c)(2) motion, we next consider whether the district court abused its

discretion in denying that motion.

Under § 3582(c)(2), the district court must undertake a two-step process.

Dillon, 560 U.S. at 826-27, 130 S. Ct. at 2691.  First, the district court must

---

[11]The Ninth and Third Circuits' decisions in Trujillo and Weatherspoon are cited in May and Beard as adopting a similar implied prohibition on successive § 3582(c)(2) motions.  See May, 855 F.3d at 275 (indicating that its conclusion that there is an implied, non-jurisdictional prohibition on § 3582(c)(2)-based motions for reconsideration "comports with the decisions of . . . our sister circuits" and citing Trujillo and Weatherspoon); Beard, 745 F.3d at 291-92 (stating that Trujillo and Weatherspoon stand for the proposition that the § 3582(c)(2) statute created a non-jurisdictional rule "under which successive motions are prohibited and should be denied as outside the scope of the statute").

However, Trujillo and Weatherspoon were much more limited.  While acknowledging that there is no express jurisdictional limitation on successive § 3582(c)(2) motions within the statute itself, those courts refused to address the government's arguments regarding non-jurisdictional bars to such motions because the government waived those arguments by failing to timely raise them.  See Trujillo, 713 F.3d at 1007-08 ("Holding as we do that the district court had jurisdiction to entertain Trujillo's second motion under § 3582(c)(2), we need not address the validity or applicability of non-jurisdictional restrictions of such motions urged by the government . . . . Those non-jurisdictional challenges were waived by the government's failure to object in the district court."); Weatherspoon, 696 F.3d at 422 ("Having assured ourselves that the District Court had subject matter jurisdiction to consider Weatherspoon's second § 3582(c)(2) motion, we will not further consider the government's arguments that Weatherspoon was barred from filing a second § 3582(c)(2) motion based on the same Guidelines amendment.  The government did not raise these arguments before the District Court and therefore they are waived.").

We follow the example of our sister circuits in Trujillo and Weatherspoon and decline to address the validity or applicability of other potential non-jurisdictional bars to successive § 3582(c)(2) motions because the issue is not now before us.

determine if the defendant is eligible for relief, i.e., whether a retroactive Guidelines amendment actually lowers his applicable Guidelines range.  Id.  If so, the district court must then "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized . . . is warranted in whole or in part under the particular circumstances of the case."[12]  Id. at 827, 130 S. Ct. at 2692.

As to step one, the parties and the district court agree that Amendment 599 applies retroactively, that Amendment 599 lowered Caraballo's Guidelines range, and that Caraballo was eligible for a sentence reduction under § 3582(c)(2).

As to step two, the district court, after explicitly weighing all of the pertinent § 3553(a) factors, found that Caraballo's life sentence "is sufficient, but not greater than necessary," to address those statutory factors.  In so holding, the district court referred back to the reasons it gave in denying Caraballo's initial motion for a sentence reduction in July 2015.  In that order, the district court clearly and thoroughly explained that life imprisonment remained an appropriate sentence based on the serious and heinous nature of Caraballo's crimes, the need for adequate deterrence, and the need to protect the public from future crimes.  See

---

[12]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to, inter alia, reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public; (3) the kinds of sentences available; (4) the applicable sentencing range under the Guidelines; (5) any pertinent Sentencing Commission policy statement; and (6) the need to avoid unwarranted disparities among defendants.  18 U.S.C. § 3553(a).

United States v. Williams, 557 F.3d 1254, 1256 (11th Cir. 2009) (per curiam) (explaining that district courts must consider the § 3553(a) factors when analyzing a § 3582(c)(2) motion, but need not articulate the applicability of each factor "as long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court") (quotation marks omitted).

To the extent Caraballo argues that the district court erred in denying him an evidentiary hearing on the subject of his remorse, district courts are not required to hold hearings in § 3582 proceedings or to even have the defendant present. Phillips, 597 F.3d at 1198 n.18.  In addition, the record reflects that the district court did take this new revelation into account.

To the extent Caraballo argues that the district court did not give sufficient weight to his post-conviction conduct when it weighed the § 3553(a) factors, the district court is not required to consider such conduct, and the record reflects that the district court did weigh the § 3553(a) factors and Caraballo's post-conviction conduct when denying his motion.  See Williams, 557 F.3d at 1256-57 (noting that, in considering § 3582(c)(2) motions, district courts "may" consider a defendant's post-sentencing conduct but that the decision of whether to reduce a defendant's sentence lies within the sound discretion of the district court).

## VIII.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Caraballo's

renewed motion for a sentence reduction under 18 U.S.C. § 3582(c)(2).

**AFFIRMED.**