[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11691
Non-Argument Calendar
_____

D.C. Docket No. 9:08-cr-80004-DMM-7


UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

PABLO RIVAS,
a.k.a. Black,
a.k.a. T-Lo,

                                                            Defendant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 23, 2020)

Before JORDAN, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Pablo Rivas, a federal prisoner proceeding pro se, appeals the district court's denial of his motion to reduce his 210-month prison sentence based on the First Step Act of 2018.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Guilty Plea and Conviction

In February 2008, a grand jury indicted Rivas on one count of conspiracy to distribute controlled substances, namely 50 grams or more of a mixture or substance containing a detectable amount of "crack" cocaine and 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), and three counts of possession with intent to distribute crack cocaine, in violation of § 841(a)(1) and 18 U.S.C. § 2 (Counts 3-5).

Pursuant to 21 U.S.C. § 851, the government filed an information notifying Rivas that based on his 1997 Florida felony conviction for the sale of cocaine, he was subject to an increased punishment under § 841(b)(1)(A) and (B).  Given the statutory § 851 notice, Rivas faced a statutory mandatory minimum of twenty years and a statutory maximum of life for his drug crimes.  See 21 U.S.C. § 841(b)(1)(A)(iii) (2008).

In May 2008, Rivas pled guilty, pursuant to a plea agreement, to the drug distribution conspiracy in Count 1 in exchange for the dismissal of the remaining

2

counts.  Rivas agreed to a factual proffer that stated that Rivas distributed crack cocaine and cocaine as part of an extensive illegal drug trafficking organization, and he used his codefendants as drug couriers.  The parties agreed that the quantity of crack cocaine attributable to Rivas in the drug conspiracy was at least 50 grams but less than 150 grams.  The government also agreed that it would rely only on Rivas's 1997 Florida sale of cocaine conviction in seeking enhanced penalties under §§ 841(b) and 851.[1]

## B.    Original Sentencing and Rule 35(b) Reduction

At the September 2008 sentencing, the district court accepted the drug quantities agreed to in the plea agreement.  The district court concluded, however, that the drug quantities did not matter because, given that Rivas was a career offender, he still had a total adjusted offense level of 34 under the career offender guideline and a criminal history category of VI, which resulted in an advisory guidelines range of 262 to 327 months' imprisonment.[2]  The district court also determined, and Rivas agreed, that Rivas faced a statutory mandatory minimum

---

[1]Rivas had a second felony drug conviction that, if included in the § 851 information, would have subjected him to a statutory mandatory life sentence at his 2008 sentencing.  See 21 U.S.C. § 841(b)(1)(A)(iii) (2008).

[2]Under U.S.S.G. § 4B1.1(b), a career offender whose offense statutory maximum is life automatically receives an offense level of 37.  See U.S.S.G. § 4B1.1(b)(A) (2008).  Rivas received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 34.

20-year (240-month) sentence under § 841(b)(1)(A).  Rivas and the government asked for the mandatory minimum 240-month sentence.

The district court agreed and varied downward to impose a 240-month prison term, followed by ten years' supervised release.  Consistent with the appeal waiver in his plea agreement, Rivas did not file a direct appeal.

In 2009, the district court granted the government's motion under Rule 35(b) of the Federal Rules of Criminal Procedure and reduced Rivas's sentence to 210 months in light of his substantial assistance to the government.

## C.     Motion for Sentence Reduction Based on the First Step Act

In December 2018, Congress passed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  Shortly thereafter, Rivas filed a pro se motion for a reduction of his sentence based on § 404 of the First Step Act.

Section 404 of the First Step Act authorizes, but does not require, the district courts to impose reduced sentences for defendants convicted of certain crack cocaine offenses "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed."  First Step Act § 404(a)-(c), 132 Stat. at 5222.[3]  In turn, sections 2 and 3 of the Fair Sentencing

---

[3]Section 404 of the First Step Act provides in full:
(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

Act reduced the penalties for certain crack cocaine offenses.  Fair Sentencing Act of 2010, Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372, 2372.  In particular, section 2 increased the quantity of crack required to trigger the statutory penalties prescribed by §§ 841(b)(1) and 960(b).  Id. § 2; see Dorsey v. United States, 567 U.S. 260, 264, 132 S. Ct. 2321, 2326 (2012).  Section 2 raised the threshold for § 841(b)(1)(A)(iii)'s 20-year mandatory minimum from 50 grams to 280 grams and the threshold for § 841(b)(1)(B)(iii)'s 10-year mandatory minimum from 5 grams to 28 grams.  Fair Sentencing Act § 2.  The First Step Act of 2018, in effect, makes sections 2 and 3 of the Fair Sentencing Act of 2010 retroactive to Rivas's 2008 sentencing.

Under the Fair Sentencing Act, Rivas's mandatory minimum prison sentence for his offense, which involved "28 grams or more" of crack cocaine, would have been 10 years' imprisonment, rather than the 20 years that applied at his 2008

---

(b) DEFENDANT'S PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on the motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time of the covered offense.
(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404.

sentencing. However, the statutory maximum penalty for Rivas's offense would not have changed under the Fair Sentencing Act but would have remained the same. His mandatory minimum term of supervised release would have been 8 years, rather than 10 years. Compare 21 U.S.C. § 841(b)(1)(B)(iii) (2010); 21 U.S.C. § 841(b)(1)(A)(iii) (2008).

In his motion, Rivas argued that he was eligible for, and entitled to, a sentence reduction. Rivas stated that he had not received any disciplinary reports in prison and attached to his motion prison records showing that he had completed various classes, including a drug class and GED classes, vocational training, and an apprenticeship.

The government opposed Rivas's 2018 motion. The government agreed that Rivas's offense of conviction was a "covered offense" under the First Step Act but argued that his prison term should not be reduced. The government stressed that, because the § 851 enhancement still applied, Rivas remained subject to the statutory maximum of life imprisonment. Therefore, the government argued, even if the Fair Sentencing Act had been in effect at the time of Rivas's 2008 sentencing, he still would have qualified as a career offender under the Guidelines and would have had the same advisory guidelines range. The government stated, however, that it did not oppose a reduction in Rivas's 10-year supervised release term to the 8-year statutory minimum applicable after the Fair Sentencing Act.

6

The district court denied Rivas's motion for a sentence reduction. The district court stated that Rivas's "statutory maximum penalty did not change," and "the offense level under the career offender guideline remains a level 37, pursuant to § 4B1.1(b)." After noting that the government did not oppose a reduction in Rivas's supervised release term, the district court ordered that Rivas's "term of Supervised Release is hereby reduced to <u>EIGHT (8) YEARS</u>." The district court denied Rivas's subsequent motion for reconsideration.

## II. DISCUSSION

On appeal, Rivas argues that: (1) the district court erred in denying his motion on the ground that he was "ineligible" for a sentence reduction under the First Step Act, and, alternatively, (2) the district court abused its discretion by declining to reduce his prison sentence. After review of the record, however, we conclude that the district denied Rivas's motion as a matter of discretion and not because Rivas was "ineligible" for a reduction under the First Step Act. Furthermore, the district court did not abuse its discretion in reducing only Rivas's supervised release term.[4]

---

[4]This Court reviews <u>de novo</u> the district court's authority to modify a sentence. <u>United States v. Phillips</u>, 597 F.3d 1190, 1194 n.9 (11th Cir. 2010). We review the district court's decision to grant or deny a sentence reduction only for an abuse of discretion. <u>United States v. Caraballo-Martinez</u>, 866 F.3d 1233, 1238 (11th Cir. 2017).

7

"The law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." United States v. Puentes, 803 F.3d 597, 605-06 (11th Cir. 2015); see also 18 U.S.C. § 3582(c)(1)(B) ("The court may not modify a term of imprisonment once it has been imposed except . . . to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."). As already discussed, the First Step Act authorizes, but does not require, a district court to "impose a reduced sentence" for a "covered offense" and to do so "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect" when the defendant committed the covered offense. First Step Act § 404(b). A "covered offense" is an offense for which the "statutory penalties" were "modified" by section 2 or 3 of the Fair Sentencing Act. Id. § 404(a).

We reject Rivas's contention that the district court found him "ineligible" for a sentence reduction under the First Step Act. Nowhere in the order denying Rivas's motion does the district court state that Rivas is ineligible. Moreover, the government did not argue before the district court that Rivas was ineligible for a reduction under the First Step Act. Instead, the government conceded that Rivas's offense was a "covered offense" under the First Step Act, i.e., Rivas was eligible, but argued that the district court should reduce only Rivas's supervised release term and not his prison term given that Rivas's advisory guidelines range would

8

have been the same had he been sentenced after the Fair Sentencing Act's enactment. Clearly, the district court determined that Rivas was eligible for a reduction under the First Step Act because it reduced Rivas's supervised release term from 10 years to 8 years. Under a fair reading of the district court's order, the district court understood that it had the authority under the First Step Act to reduce Rivas's prison term and chose not to do so.[5]

In declining to reduce Rivas's 210-month prison term, the district court stated correctly that Rivas's "statutory maximum penalty [of life] did not change" as a result of the First Step Act's retroactive application of sections 2 and 3 of the Fair Sentencing Act. The government complied with § 851(a)(1) by filing its information before Rivas's guilty plea, and § 851(a)(1) was unaffected by the First Step Act. See First Step Act §§ 401-404, 132 Stat. at 5220-22; 21 U.S.C. § 851(a)(1).

As a consequence, if Rivas were to be sentenced "as if" sections 2 and 3 of Fair Sentencing Act were in effect, Rivas's offense level would "remain[ ] a level 37, pursuant to § 4B.1.1(b)," the career offender provision. That means Rivas's advisory guidelines range of 262 to 327 months would also be the same. As noted

---

[5]Notably, roughly a week before denying Rivas's motion for a sentence reduction, the district court granted similar motions filed by two of Rivas's codefendants who also were convicted of the drug conspiracy and reduced their prison terms. This is further evidence that the district court understood it also had authority to reduce Rivas's prison term and decided, as a matter of discretion, not to do so.

above, Rivas's original 240-month sentence already was the result of a downward variance from that (still-applicable) advisory guidelines range.  In addition, Rivas's prison sentence was further reduced to 210 months after the government's Rule 35(b) motion.  To be sure, after the First Step Act the district court was now free to extend its original downward variance even further because the Fair Sentencing Act lowered the applicable mandatory minimum for Rivas's crack cocaine offense from twenty years (240 months) to ten years (120 months).  However, we cannot say that Rivas has shown that the district court's decision not to do so here was an abuse of discretion.

**AFFIRMED.**