[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12945

_____

D.C. Docket No. 5:90-cr-00003-CAR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY JEROME ANDERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 19, 2014)

Before WILSON and ROSENBAUM, Circuit Judges, and SCHLESINGER,* District
Judge.

_____

* Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

SCHLESINGER, District Judge:

Jerry Jerome Anderson appeals the district court's denial of his second motion for a sentence reduction based on Amendment 750 of the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") pursuant to 18 U.S.C. § 3582(c)(2).  The government argues that the district court did not even have jurisdiction to consider Anderson's second motion because he had already fully litigated one § 3582(c)(2) motion based on Amendment 750.  The text of § 3582(c)(2) is silent on the availability of second or successive motions based on the same Amendment to the Sentencing Guidelines.  Further, this Court has not directly addressed this issue, and other Circuits that have analyzed this issue are split.

## I.  BACKGROUND

In 1990, Jerry Anderson was convicted by a federal jury of the following counts: (1) conspiracy to possess with intent to distribute cocaine and crack cocaine, 21 U.S.C. §§ 841(a)(1) and 846; (2) possession with intent to distribute cocaine and crack cocaine, 21 U.S.C. § 841(a)(1); (3) operating a continuing criminal enterprise, 21 U.S.C. § 848; (4) conspiracy to commit money laundering, 18 U.S.C. § 1956(a)(1)(B)(i); and (5)-(7) money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), (2).  Presentence Investigation Report ("PSI") ¶¶ 1-9.  The probation officer in the PSI

discussed the amount of cocaine and crack cocaine sold during the relevant time period, and he determined that "at least 56 kilos of crack cocaine alone" were involved. *Id.* ¶ 27. Pursuant to the relevant section of the Sentencing Guidelines, an offense involving 15 kilograms or more of crack cocaine had a base offense level of 42; thus, it was determined that Anderson's base offense level was 42. *Id.* ¶ 46. The probation officer added four points pursuant to U.S.S.G. § 2D1.5, because Anderson was convicted of operating a continuing criminal enterprise, resulting in a total offense level of 46. *Id.* Then, based on an offense level of 46 and a criminal history category of III, Anderson's guidelines range was life imprisonment. *Id.* ¶¶ 59, 70.

At Anderson's sentencing hearing in 1991, the district court determined that at least 15 kilograms of crack cocaine were involved in the operation, and the evidence would even support a finding of 56 or more kilograms of crack cocaine. Doc. 241 at 48. But at the least, 15 kilograms of crack cocaine were involved, which supported the finding that Anderson's base offense level was 42. *Id.* at 48-49. The district court then sentenced Anderson to life imprisonment. Doc. 208.

In 2006, the district court denied Anderson's motion to modify his sentence based on Amendment 505 of the Sentencing Guidelines. Doc. 360. Amendment 505 lowered the maximum base offense level from 42 to 38 for offenses involving certain quantities of various drugs. *Id.* at 1. Therefore, Anderson's base offense level

3

became 38, with a four point addition pursuant to U.S.S.G. § 2D1.5, for a total offense level of 42. *Id.* The district court recalculated Anderson's guideline sentencing range to be 360 months to life imprisonment. *Id.* However, upon consideration of the factors set forth in 18 U.S.C. § 3553(a) and specifically taking note of the amount of drugs involved in the continuing criminal enterprise, the district court found that the sentence of life imprisonment remained appropriate. *Id.* Anderson appealed the district court order, and this Court affirmed. Doc. 371 at 8.

In 2008, Anderson moved for another sentence reduction pursuant to Amendment 706. Doc. 375. The district court determined that even after applying Amendment 706, Anderson's amended offense level remained 42 and his guidelines range remained 360 months to life imprisonment—the same range the district court found applicable after applying Amendment 505 in 2006. Doc. 377. The court thus denied Anderson's motion for a sentence reduction. *Id.* On appeal, the Eleventh Circuit granted a motion to withdraw by Anderson's counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), finding no issues of arguable merit and affirming the denial of Anderson's motion. Doc. 397.

This brings us to the present controversy. In November 2011, Anderson filed another § 3582(c)(2) motion for a sentence reduction based on Amendment 750 of the Sentencing Guidelines. Doc. 403. Amendment 750, among other things, raised the

4

amount of crack cocaine necessary under U.S.S.G. § 2D1.1(c) to receive a base offense level of 38 from 4.5 kilograms to 8.4 kilograms. *See* U.S.S.G. app. C, amend. 750. The district court denied the motion, finding that Amendment 750 did not reduce Anderson's guidelines range. Docs. 405, 406. Anderson appealed, arguing that the district court abused its discretion in failing to state its reasons for denying his motion, in failing to use the 2011 Sentencing Guidelines in calculating his new guidelines range, and in failing to consider the various factors set forth in 18 U.S.C. § 3553(a). Doc. 410 at 2. He also argued that a new PSI and sentencing hearing were necessary. *Id.* This Court found that the district court did not abuse its discretion, noting that Amendment 750 did not effectively reduce Anderson's guidelines range since his conviction involved at least 15 kilograms of crack cocaine; Amendment 750 only increased the minimum amount of crack cocaine necessary to receive a base offense level of 38 from 4.5 kilograms to 8.4 kilograms. *Id.* at 3-4. Thus, after adding four points pursuant to U.S.S.G. § 2D1.5, Anderson's offense level was still 42 with a criminal history of III, which converted to an unchanged guidelines range of 360 months to life imprisonment. *Id.* at 4. The Sentencing Guidelines state that a district court may not modify an imposed term of imprisonment under § 3582(c)(2) unless the defendant's guidelines range was subsequently lowered by an Amendment;

5

the district court was therefore without authority to reduce Anderson's sentence. *Id.* at 3 (citing U.S.S.G. § 1B1.10(a)(2)(B)).

In May 2013, Anderson filed the present "Renewed Motion for Reduction of Sentence" pursuant to 18 U.S.C. § 3582(c)(2). Doc. 415. He argued that the district court was obligated to recalculate his guidelines range based on the marijuana equivalents for cocaine and crack cocaine as set forth in U.S.S.G. § 2D1.1 cmt. n.10 (2011), as amended by Amendment 750. *Id.* at 3-4. He asserted that if the district court properly used the drug equivalency tables, such a calculation would reduce his guidelines range from 360 months to life down to 292 to 365 months. *Id.* at 5. Anderson further argued that a sentence at the bottom of the guidelines range was appropriate pursuant to the 18 U.S.C. § 3553(a) factors. *Id.* at 13-19.

On June 14, 2013, the district court denied Anderson's renewed motion without waiting for the government's response. Doc. 416. Specifically, the district court found there to be "no change in circumstance" since the court's previous ruling that Amendment 750 did not apply to effectively lower his guidelines range. *Id.* Anderson timely appealed, and oral argument took place before this Court on October 16, 2014.

## II. DISCUSSION

6

Having considered the parties' briefs and oral arguments, we note three issues to be determined on appeal: (1) whether the district court had jurisdiction to consider Anderson's renewed 18 U.S.C. § 3582(c)(2) motion based on Amendment 750; (2) if this Court has jurisdiction, whether Anderson's renewed motion is precluded by the law-of-the-case doctrine; and (3) if this Court reaches the merits, whether the district court erred in determining that Anderson did not qualify for a sentence reduction under Amendment 750 to the Sentencing Guidelines because it did not have the effect of lowering his guidelines range. This Court will address each of these issues in turn.

## 1. The District Court's Jurisdiction

This Court must resolve jurisdictional issues before addressing the merits of the underlying claims. *United States v. Cartwright*, 413 F.3d 1295, 1299 (11th Cir. 2005). We "review *de novo* the district court's legal conclusions regarding the scope of its authority under the Sentencing Guidelines in a § 3582(c)(2) proceeding." *United States v. Douglas*, 576 F.3d 1216, 1218 n.1 (11th Cir. 2009) (citation omitted).

The government argues that the district court did not have jurisdiction to even consider Anderson's renewed motion because he had already fully litigated—in the district court and on appeal to the Eleventh Circuit—a motion based on the same amendment in the Sentencing Guidelines. Appellee's Brief at 8. Essentially, the government's argument is that a federal prisoner may only bring one motion under

7

18 U.S.C. § 3582(c)(2) for each amendment in the Sentencing Guidelines that may apply to reduce the prisoner's sentence, no matter the outcome of the motion.

In response, Anderson agrees that generally, district courts do not have jurisdiction to modify a sentence once it has been imposed. *See, e.g.*, *United States v. Liberse*, 688 F.3d 1198, 1201 (11th Cir. 2012). However, he argues that 18 U.S.C. § 3582(c) creates a few exceptions to this rule, which grant district courts the authority to modify prisoners' terms of imprisonment. Replacement Reply Brief ("RRB") at 2-3. The exception at issue in this case concerns "a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Anderson further argues that because there is no restrictive language in the statute, "[i]f there is a limitation on Mr. Anderson's ability to file a renewed motion under § 3582(c)(2), it is a ***procedural*** limitation, not a jurisdictional one." RRB at 1 (emphasis in original).

Anderson then proceeds to explain that the government's argument is incorrect because, given that the statute is a grant of jurisdiction, it conflicts with the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). RRB at 3-4. In *Arbaugh*, the Supreme Court noted that federal courts sometimes use the term "jurisdiction" vaguely, which may cause confusion when determining a court's subject matter jurisdiction. *Arbaugh*, 546 U.S. at 510-11. The issue in that case was

8

whether a limitation in a statute was jurisdictional in nature or whether it was an element that went to the merits of the plaintiff's case. *Id.* at 510. The Supreme Court created a "bright line" test and held that Congress must "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional." *Id.* at 515. If Congress does not clearly articulate its intention to "rank a statutory limitation . . . as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

Important for our purposes is the Supreme Court's emphasis on requiring Congress to clearly articulate its intentions when creating a jurisdictional limitation. *See id.* at 515. We find that § 3582(c)(2) contains no language that places a limitation on the district court's jurisdiction to consider successive motions based on the same amendment to the Sentencing Guidelines. The language of the statute simply states,

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, *the court may reduce the term of imprisonment* after considering the factors set forth in section 3553(a) to the extent they are applicable . . . .

18 U.S.C. § 3582(c)(2) (emphasis added). Thus, because there is no clearly expressed jurisdictional limitation on a district court's ability to hear successive motions based

9

on the same amendment, this Court holds that it would be improper to read one into the statute.

This holding agrees with other analogous cases in this Circuit, for whatever other restrictions may be placed on the district court's ability to consider a successive motion based on the same amendment, none of these potential restrictions are articulated in jurisdictional terms in the statute itself.

For example, this Court's decision in *United States v. Phillips*, 597 F.3d 1190 (11th Cir. 2010), does limit a district court's authority to entertain a motion for reconsideration of an order entered pursuant to 18 U.S.C. § 3582(c)(2) in certain circumstances. In *Phillips*, the district court granted the prisoner's motion brought pursuant to § 3582(c)(2) and subsequently modified his sentence. 597 F.3d at 1191-93. Then, the government filed a motion for reconsideration of the district court's order due to a error in the district court's calculations—it had used Sentencing Guidelines from the incorrect year. *Id.* at 1193-94. The district court granted the government's motion for reconsideration roughly five weeks later, setting aside the prisoner's new sentence and reimposing the original sentence. *Id.* On appeal, this Court ultimately held that 18 U.S.C. § 3582(c)(2) proceedings are to be considered sentencing proceedings. *Id.* at 1198. "Accordingly, if a district court grants a defendant's § 3582(c)(2) motion, modifies the original sentence, and imposes a

10

different term of imprisonment, the district court is again 'sentencing' the defendant." *Id.* at 1199. And once a new sentence is imposed pursuant to this statute, then "the strictures of Rule 35 [of the Federal Rules of Criminal Procedure] apply," and the district court only has fourteen days to correct a sentence for clear error. *See id.*

At first glance, it appears that *Phillips* is distinguishable from the present case, because Anderson's motion was not granted and he has not been newly sentenced pursuant to § 3582(c)(2). However, the rationale of *Phillips* also extends to cases in which the district court *denies* a defendant's § 3582(c)(2) motion *on the merits* after considering the § 3553(a) factors. A district court's denial on the merits is still, in essence, a new sentence, because in these cases the district court recognizes that the relevant Sentencing Guidelines Amendment applies to the defendant to reduce his guidelines range, yet chooses to resentence the defendant to the same term of imprisonment after considering various factors. Thus, the district court's authority to consider a defendant's successive motion is likewise limited in this circumstance to Rule 35's fourteen-day time limitation.

Nevertheless, a denial on the merits is to be distinguished from a procedural denial. The distinction is subtle, but it is also important. Not all denials of motions brought pursuant to § 3582(c)(2) are the same; there is a difference between a district court's denial of a motion because the relevant amendment does not even lower the

11

defendant's guidelines range in the first place, and a district court's denial of a motion because, while the relevant statute does lower the defendant's guidelines range, the court considers the merits of the defendant's motion based on various factors and chooses to resentence him to his original sentence.  In the former type of case, there is no new sentence because the statute does not give the district court jurisdiction to modify a defendant's sentence—the district court only has this authority if a defendant's guidelines range has "subsequently been lowered by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a)(2)(B).  Only in the latter type of case can it be said the district court imposes a sentence, because the defendant's guidelines range is lower and the court considers the merits of the defendant's motion when deciding what new sentence to impose.

Thus, this Court must look to the facts of this case to determine what type of denial is involved.  Upon review, the district court denied Anderson's motion because the court determined that Amendment 750 did not lower his guidelines range.  Doc. 410 at 3-4.  In this Court's previous order affirming the district court's first order, we explained that "the district court [did not] err by failing to consider the factors under 18 U.S.C. § 3553(a), because the court was only required to analyze those factors if it determined that Amendment 750 had the effect of lowering Anderson's guidelines range, which it did not." *Id.* at 4.  Therefore, this Court's decision in *Phillips* does

12

not apply to the case before it now, and the district court's jurisdiction was not limited by the strictures of Federal Rule of Criminal Procedure 35 after it entered the first order. We now turn to the question of whether the law-of-the-case doctrine nevertheless applies to Anderson's successive § 3582(c)(2) motion.[1]

## 2. The Law-of-the-Case Doctrine

This Court has explained the law-of-the-case doctrine on several occasions. The doctrine is a rule of practice " 'self-imposed by the courts [and] operates to create efficiency, finality and obedience within the judicial system.' " *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) (quoting *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir. 1987) (en banc)). It is not jurisdictional in nature, and the court's power is not limited thereby; in other words, "failure to advance a law-of-the-case objection may mean that the objection is forfeit." 18B Wright, Miller & Cooper, Federal Practice & Procedure § 4478, at 668-70 (2d ed. 2002). The doctrine provides that "[a]n appellate decision binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal." *Id.* This rule encompasses both "findings of fact [and] conclusions of law made by the appellate court." *United*

---

[1] In their briefs, the parties analyze a circuit split on the jurisdictional issue, and this Court recognizes that a circuit split exists. However, we decline to engage in an analysis of the decisions of our sister circuits because this Court's own jurisprudence fully resolves the issue.

13

*States v. Burns*, 662 F.2d 1378, 1384 (11th Cir. 1981).  There are limited exceptions

to the law-of-the-case doctrine: "where there is new evidence, an intervening change

in controlling law dictat[es] a different result, or the appellate decision, if

implemented, would cause manifest injustice because it is clearly erroneous."  *Id.*

(citing *Litman*, 825 F.2d at 1510).

In this case, the government did not raise the law-of-the-case doctrine on

appeal, and as such, Anderson argues that the government has waived its right to use

it.[2]  RRB at 7 n.5.  Anderson is partially correct; while many procedural doctrines are

waived if not timely raised, the law-of-the-case doctrine may be raised by the court

*sua sponte*. *See, e.g.*, *Pope v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 1254, 1264 n.3

(11th Cir. 2014) ("Though not invoked by either party, the law-of-the-case doctrine

requires that we follow legal conclusions reached in a prior appellate decision in the

same case."); *see also United States v. Wallace*, 573 F.3d 82, 90 n.6 (1st Cir. 2009)

(holding that the appellate court may "raise the law of the case issue *sua sponte* if we

deem it appropriate" (citations omitted)). Courts have a compelling interest in

continuity, finality, and efficiency both within cases and within the greater judicial

---

[2] Generally, the government would be required to raise a procedural doctrine in the district court, but in this case, the district court entered its order denying Anderson's successive motion before the government had an opportunity to respond.  Regardless, the government still failed to raise the doctrine on appeal.

14

system, and the law-of-the-case doctrine is an important feature in realizing this goal.

If this Court chooses to apply the doctrine to this case, it would mean that our previous findings of fact and conclusions of law decided on Anderson's first appeal are binding and constitute the law of the case in all subsequent proceedings. This Court affirmed the district court's first denial, holding that the district court sufficiently stated its reasons for denying the motion, that the district court used the correct version of the Sentencing Guidelines in calculating Anderson's new guidelines range under Amendment 750, that Amendment 750 did not apply to Anderson based on the amount of crack cocaine for which he was found responsible, and that the district court did not err in denying Anderson's request for a new PSI. Doc. 410 at 3-5.

If this Court chooses not to apply the doctrine, then this Court may consider Anderson's argument, raised for the first time in his successive motion, that the district court committed error by failing to recalculate his guidelines range using the marijuana equivalency tables as set forth in U.S.S.G. § 2D1.1 cmt. n.10 (2011), as amended through Amendment 750. Doc. 415 at 3-4. He asserts that if the district court had properly used the marijuana equivalents for cocaine and crack cocaine, such a calculation would result in a reduced guidelines range from 360 months to life down to 292 to 365 months. *Id.* at 5.

As mentioned previously, one of the exceptions to the law-of-the-case doctrine is where the appellate decision is clearly erroneous and would create a manifest injustice if implemented. *Burns*, 662 F.2d at 1384. If this Court's previous holding—which affirmed, *inter alia*, the district court's method in calculating Anderson's guidelines range—is clearly erroneous and manifestly unjust, then the law-of-the-case doctrine should not apply.

It is true that the district court should have used the marijuana equivalency tables to calculate Anderson's guidelines range because his conviction involved multiple drug types (powder cocaine and crack cocaine). However, there is no manifest injustice to be found, because even though Amendment 750 changed the marijuana equivalency for crack cocaine, the amendment did not affect Anderson's base offense level of 38 because, as the district court previously found, Anderson's conviction involved 15 kilograms or more of crack cocaine. U.S.S.G § 2D1.1(c)(1) (2011); Doc. 360 at 1-2; Doc. 241 at 48-49. Also, "the marihuana equivalency for any controlled substance is a constant that can be calculated using any threshold in the Drug Quantity Table," which means that there is no benefit gained whatsoever in converting multiple drugs to their marijuana equivalencies. U.S.S.G. app. C, amend. 750 at 394. The 15 kilograms of crack cocaine for which Anderson was found responsible would not turn into a lesser amount when converted into its marijuana

16

equivalent; those who promulgate the Sentencing Guidelines are indeed smarter than that.  Accordingly, adding the equivalency conversion for powder cocaine to marijuana would only exacerbate the amount of drugs involved in determining Anderson's base offense level.

In conclusion, any error on the part of the district court was harmless. Anderson has offered no justification to depart from this Court's previous order affirming the district court's finding that Amendment 750 does not apply to reduce Anderson's guidelines range because his conviction involved at least 15 kilograms of crack cocaine.  This holding is the law of the case, and we need not address the merits of Anderson's claim further.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order denying Anderson's renewed 18 U.S.C. § 3582(c)(2) motion based on Amendment 750 to the Sentencing Guidelines.