**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket Nos. 46961 and 47245**

| | |
|---|---|
| SAFARIS UNLIMITED, LLC,<br>a Georgia limited liability company,<br><br>  Plaintiff-Respondent,<br><br>v.<br><br>MIKE VON JONES,<br><br>  Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Twin Falls, September 2021 Term

Opinion filed: December 3, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Eric J. Wildman, District Judge.

The district court's decision is <u>affirmed</u>.

Benoit, Alexander, Mollerup & Danielson, PLLC, Twin Falls, for Appellant. Michael D. Danielson argued.

Stover, Gadd & Associates, PLLC, Twin Falls, for Respondent. David W. Gadd argued.

---

ZAHN, Justice.

Mike Von Jones ("Jones") appeals the denial of his motion to set aside a sheriff's sale and the award of attorney fees to Safaris Unlimited LLC ("Safaris") under Idaho Code section 12-120(5). Jones argues that: (1) the district court erred by concluding Jones's monetary tender to the clerk of the court did not preclude Safaris from claiming ownership of Jones's pending lawsuit; (2) the district court abused its discretion by denying his motion to set aside the sheriff's sale; and (3) the district court erred in awarding costs and fees pursuant to section 12-120(5) for actions taken after Jones' tender to the clerk. We affirm the district court's orders.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This is the third time this Court has considered this case, which involves a contract dispute between Jones and Safaris. On the first appeal we reversed the district court's grant of summary judgment, holding there was a genuine issue of material fact as to whether there was a valid

1

contract between Jones and Safaris. *Safaris Unlimited, LLC v. Jones* (*Safaris I*), 158 Idaho 846, 850, 353 P.3d 1080, 1084 (2015).

Following remand, a jury found that there was an enforceable contract between Jones and Safaris and that Jones breached the contract. The jury awarded Safaris $26,040.00. On February 24, 2017, Jones filed a notice of appeal. The district court subsequently granted Safaris' motion for attorney fees and entered an amended judgment against Jones for $122,984.82.

On June 2, 2017, Safaris petitioned for and obtained a writ of execution requiring the sheriff to execute upon Jones's personal and real property, including a pending lawsuit against Jeremy Sligar and Overtime Garage, LLC (the "Sligar Lawsuit").[1] Prior to the sheriff's sale, Safaris and Sligar entered into a Conditional Settlement Agreement and Release, which provided in relevant part:

> At the sale of Jones's rights to the Lawsuit, Safari [sic] shall credit bid up to an amount at the discretion of Safaris. Sligar and Overtime Garage agree not to bid toward the purchase of Jones's rights to the Lawsuit, either through themselves or through a third party, and not to encourage any third parties to bid toward the purchase of Jones's rights.
>
> ….
>
> Sligar and Overtime Garage shall pay Safaris the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) . . . within thirty (30) days of Safari's [sic] acquisition of Jones's rights to the Lawsuit.

At the sheriff's sale on June 17, 2017, Safaris—the only bidder present—bought the lawsuit for $2,500.00 via a credit bid. Although Jones received notice of the sheriff's sale, neither Jones nor his representative attended. Jones did, however, file a motion to set aside the sheriff's sale of the Sligar Lawsuit, which the district court granted on August 11. On September 1, 2017, Safaris cross-appealed the district court's order setting aside the sheriff's sale.

On December 18, 2017, Safaris executed on additional personal property of Jones. The sale returned $8,300.00. On December 28, 2017, while both Jones's and Safaris' appeals were pending, Jones tendered a $119,238.04 check to the clerk of the court pursuant to Idaho Code section 10-1115, in an attempt to satisfy the remainder of the amended judgment.

---

[1] In the Sligar Lawsuit, Jones filed a complaint against Sligar regarding a joint business venture, specifically asserting "breach of fiduciary duties, fraud, misappropriation, embezzlement, and unjust enrichment." Sligar then counterclaimed, arguing "breach of contract, breach of fiduciary duties, negligence per se, and unjust enrichment."

In the second appeal this Court affirmed the district court's orders appealed by Jones, vacated the district court's order setting aside the sheriff's sale, and remanded the case. *Safaris Unlimited, LLC v. Jones* (*Safaris II*), 163 Idaho 874, 888, 421 P.3d 205, 219 (2018). We held that the district court abused its discretion by setting aside the sheriff's sale without first making a sufficient finding as to the approximate value of the Sligar Lawsuit. *Id.* at 886, 421 P.3d at 217. We also ordered Jones to pay Safaris' attorney fees in the amount of $12,579.45. *Id.*

Following remand, Safaris filed a motion for release of the $119,238.04 tendered by Jones. The district court granted Safaris' motion for release of funds and determined that the deposited funds were sufficient to satisfy the amended judgment.[2] However, the district court found that the deposited funds exceeded the amount owed by $2,500.00 because Jones's tender did not account for Safaris' credit bid to purchase the Sligar Lawsuit. Jones again filed a motion to set aside the sheriff's sale.

On March 5, 2019, the district court held an evidentiary hearing on Jones's motion to vacate the sheriff's sale and later issued an order denying the motion. The district court concluded that Jones failed to establish both a gross inadequacy of consideration and very slight additional circumstances, as required by this Court in *Safaris II*. The district court held that Jones had not demonstrated a gross inadequacy of consideration because he failed to establish the litigation's approximate value. Similarly, Jones failed to show very slight additional circumstances because he could not point to any procedural irregularities "pertaining to either the notice or conduct of the sale." After denying Jones's motion to vacate the sheriff's sale, the district court ordered the clerk of the court to release the remaining $2,500.00 from the tender back to Jones or his attorneys. Jones timely appealed.

## II. ISSUES ON APPEAL

1. Whether Jones's tender to the clerk of the court pursuant to Idaho Code section 10-1115 rendered Safaris' cross-appeal in *Safaris II* moot?

2. Whether the district court abused its discretion by denying Jones's motion to set aside the sheriff's sale?

3. Whether the district court erred in awarding costs and fees pursuant to Idaho Code section 12-120(5) for actions taken after Jones tendered payment pursuant to section 10-1115?

4. Whether Safaris is entitled to an award of its attorney fees and costs on appeal?

---

[2] The district court clarified that Safaris was not entitled to post judgment interest *after* the deposit on December 28, 2017. Additionally, the district court explained that the deposit did not satisfy the fees and costs awarded to Safaris on two other occasions following the district court's entry of the amended judgment.

## III. STANDARD OF REVIEW

We have recognized that when a trial court considers a motion to set aside a sheriff's sale, "[e]ach case depends largely on its own peculiar facts; and whether the circumstances, coupled with inadequacy of price, are sufficient to warrant setting aside the sale is a matter largely within the discretion of the trial court." *Puckett v. Bergmann*, 167 Idaho 403, 406–07, 470 P.3d 1212, 1215–16 (2020) (quoting *Phillips v. Blazier-Henry*, 154 Idaho 724, 727, 302 P.3d 349, 352 (2013)). Thus, when reviewing a ruling on a motion to set aside a sheriff's sale, this Court reviews the trial court's decision for an abuse of discretion. *Id.* A trial court did not abuse its discretion if it "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with relevant legal standards; and (4) reached its decision by an exercise of reason." *Safaris II*, 163 Idaho at 884, 421 P.3d at 215 (citation omitted).

## IV. ANALYSIS

### A. The law of the case doctrine bars Jones's attempt to litigate the mootness of Safaris' cross-appeal in *Safaris II*.

Jones argues that as of December 28, 2017, when he tendered funds pursuant to Idaho Code section 10-1115, he: (1) had no further obligations under the amended judgment and (2) owned the Sligar Lawsuit because the district court had initially granted his motion to set aside the sheriff's sale. Therefore, he asserts that when he tendered funds to the clerk of the court, Safaris' claim for ownership of the Sligar Lawsuit became moot because Jones's tender satisfied the amended judgment and made Safaris whole. Safaris responds that it elected not to immediately claim the funds in 2017 because doing so would have prejudiced its cross-appeal while allowing Jones to pursue his appeal. Safaris argues that the deposit of funds pursuant to section 10-1115 did not moot its pending appeal, but instead gave it the option to either accept the tender and dismiss its appeal, or decline the tender and proceed with its appeal. Before we address the merits of this issue, however, we must address Safaris' arguments that Jones should be judicially estopped from raising it, or in the alternative, that Jones waived the argument by failing to raise it during proceedings in *Safaris II*.

#### 1. The judicial estoppel doctrine is not applicable.

Safaris argues that because Jones never raised a mootness argument during the proceedings in *Safaris II*, he should be judicially estopped from making such an argument in this appeal. Jones argues that judicial estoppel should be applied to prevent Safaris from claiming an interest in the Sligar lawsuit because it took inconsistent positions when it refrained from accepting his tender

4

until after this Court issued its decision in *Safaris II*. We conclude neither party has established that judicial estoppel should be applied in this case.

"Judicial estoppel precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first." *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013). Judicial estoppel is intended "to protect 'the integrity of the judicial system, by protecting the orderly administration of justice and having regard for the dignity of the judicial proceeding.'" *Id.* (quoting *A & J Const. Co. v. Wood*, 141 Idaho 682, 685, 116 P.3d 12, 15 (2005)). The United States Supreme Court has highlighted several factors to inform a court on whether to apply judicial estoppel in a particular case: (1) whether a party's later position is clearly inconsistent with its earlier position, (2) whether the party has succeeded in persuading a court to accept the party's earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

Applying these factors to Safaris' argument, because Jones did not argue, let alone succeed in arguing, in *Safaris II* that Safaris' cross-appeal was moot, his argument in this appeal introduces no risk of inconsistent court determinations. *See New Hampshire*, 532 U.S. at 751. We therefore conclude that judicial estoppel should not be applied against Jones.

We reach a similar conclusion with respect to Jones's judicial estoppel argument. Safaris' choice to wait until after this Court's decision in *Safaris II* to claim Jones's tender does not implicate the doctrine of judicial estoppel because Safaris never took inconsistent legal positions. At the time Jones made his tender, well-established case law held that Safaris had the option to either accept the tender and forego its appeal or decline the tender and pursue its appeal. *See Long v. Hendricks*, 117 Idaho 1051, 1052, 793 P.2d 1223, 1224 (1990) (holding that a judgment creditor may either (a) accept the tender and lose their appeal or (b) decline the tender and keep their appeal alive). Safaris' decision to pursue its appeal did not preclude it from later accepting the tender to satisfy the remaining unpaid balance of the amended judgment. However, even assuming that Safaris' later acceptance of Jones's tender was an inconsistent position, it has not been shown that it secured an unfair advantage from doing so. The district court withheld $2,500.00 from Jones's tender in recognition of the fact that Safaris bid $2,500.00 of its credit judgment to purchase the

lawsuit.[3] We therefore conclude that judicial estoppel does not bar Safaris' acceptance of Jones's tender.

2.  Jones did not waive his mootness argument.

Safaris also argues that Jones waived his mootness argument by not raising it in *Safaris II*. Safaris claims that Jones waived his mootness argument because he failed to raise it before *Safaris II* became final pursuant to Idaho Appellate Rule 38(b). In support of its argument, Safaris cites to *Sherman Storage, LLC v. Global Signal Acquisitions II, LLC*, where this Court held that "[i]ssues that are not argued and supported as required by the Appellate Rules are deemed to have been waived." 159 Idaho 331, 338–39, 360 P.3d 340, 347–48 (2015) (citation omitted). *Sherman Storage*, however, is distinguishable from this case because it stands for the premise that a party waives an issue on appeal if it fails to provide argument and authority in support of the issue. In this appeal, Jones provided argument and authority on the mootness issue. As such, Jones has not waived his mootness argument.

3.  Jones's mootness argument is barred by the law of the case doctrine.

Although neither party asserts the doctrine of the "law of the case," the doctrine functions much like stare decisis. *Regan v. Owen*, 163 Idaho 359, 362, 413 P.3d 759, 762 (2018); *see also United States v. Anderson*, 772 F.3d 662, 669 (11th Cir. 2014) ("[W]hile many procedural doctrines are waived if not timely raised, the law-of-the-case doctrine may be raised by the court sua sponte."). The doctrine exists to avoid relitigating issues that have already been decided. *Regan*, 163 Idaho at 362, 413 P.3d at 762. When "an appellate court states a principle of law in deciding a case, that rule becomes the law of the case and is controlling both in the lower court and on subsequent appeals as long as the facts are substantially the same." *Swanson v. Swanson*, 134 Idaho 512, 516, 5 P.3d 973, 977 (2000) (citation omitted). Decisions on issues during one stage of the proceeding become precedent for later stages of the same litigation. *Id.* In *Safaris II*, this Court rendered a decision on the merits of the case and thus implicitly held that Safaris' cross-appeal was not moot. "This Court must address jurisdictional issues, even if they were neither raised before, nor addressed by, the trial court." *Blankenship v. Wash. Trust Bank*, 153 Idaho 292, 295, 281 P.3d 1070, 1073 (2012). Jurisdictional issues include matters of justiciability, such as

---

[3] While Jones now argues the $2,500.00 purchase price was grossly inadequate, that is an entirely separate issue from whether Safaris should be judicially estopped from pursuing ownership of the Sligar lawsuit.

mootness. *Id.* Our decision in *Safaris II* is the law of this case and Jones cannot now, after the fact, litigate whether Safaris' prior cross-appeal was moot.

**B. The district court did not abuse its discretion in denying Jones's motion to set aside the sheriff's sale.**

In *Safaris II*, this Court vacated the district court's decision setting aside the sheriff's sale for failing to make sufficient factual findings as to the approximate value of the Sligar litigation. *Safaris II*, 163 Idaho 888, 421 P.3d at 219. This Court provided direction on remand and explained that the district court is "free to take evidence and to hold a hearing in an effort to determine approximate value, and exactitude is neither required nor feasible. The district court should look to appropriate factors it finds relevant under the circumstances." *Id.* at 887, 421 P.3d 218. The Court held that those factors may include:

> (1) the amount alleged to be in controversy and whether and to what extent any evidence supports that amount; (2) whether any liquid assets are the subject of the case and their appraised values; (3) the procedural posture of the case, including the status of any dispositive motions; (4) whether, without causing a breach of confidence, it can be ascertained that settlement discussions have been or are likely to be had; and (5) whether a contract or statute makes it likely that attorney fees will be awarded to the prevailing party.

*Id.* at 887, 421 P.3d at 218. On remand, the district court held an evidentiary hearing on Jones's motion to set aside the sale and denied the motion because it concluded Jones failed to establish both a gross inadequacy of consideration and very slight additional circumstances.

Jones now contends that the district court erred in two respects: holding him to too onerous of a standard in proving the approximate value of the Sligar Lawsuit, and misapplying the test for whether there were slight additional circumstances. Safaris, in contrast, maintains that the district court did not abuse its discretion as it properly applied the standard articulated by this Court in *Safaris II*.

1. The district court acted consistently with relevant legal standards when it held that Jones failed to provide sufficient evidence to establish the approximate value of the Sligar Lawsuit.

Jones argued at the evidentiary hearing and in his written closing argument that the approximate value of the Sligar Lawsuit was either $300,000 or $1,000,000. The district court analyzed the five factors identified in *Safaris II* to determine whether Jones had met his burden to establish either value by a preponderance of the evidence.

7

On the first factor, the amount alleged to be in controversy, the district court found that Jones failed to meet his burden. Specifically, the district court discounted the accountant's report offered by Jones. The district court found that the report suffered significant deficiencies, specifically citing equivocal language from the expert's report:

> [The accountant] states that after her preliminary review "I am left with many more questions than answers" and "[m]any questions must be answered and much more information needs to be provided in order for my examination to continue and for me to reach a conclusive equalization between the parties in this case."

The district court also noted that Jones failed to provide evidence of the approximate value of Sligar's counterclaim or the litigation costs associated with the case, which the district court found were important elements regarding the litigation's approximate value.

For the second factor, whether there are liquid assets involved in the case, the district court found there were no liquid assets but only the parties' assertion of unliquidated damages.

On the third factor, the procedural posture of the case, the district court found that the Sligar Lawsuit still "ha[d] a far way to go" and would "undoubtedly require the parties to incur substantial litigation costs given the number of claims alleged and the parties' need for a 13-day jury trial."

With regard to the fourth factor, whether settlement discussions have been or are likely to take place, the district court reviewed the settlement agreement wherein Sligar promised to pay Safaris $100,000 for the lawsuit if it purchased it at the sheriff's sale. Although Jones admitted the agreement into evidence and solicited testimony from Safaris' attorney concerning the $100,000 figure, Jones tellingly never argued that $100,000 represented an approximate value of the litigation. The district court considered the settlement agreement and determined it did not equate to the value of the litigation because,

> Settlements are arrived at through active negotiations and are not necessarily reflective of the value of the lawsuit. A variety of considerations unrelated to a lawsuit's value may influence a negotiated settlement . . . A litigant may place value on certainty, as liability, damages, and litigation costs are unpredictable at trial, but can be made more certain via settlement.

Further, the district court explained that Safaris' and Sligar's agreement to settle for $100,000 did not necessarily indicate that the litigation was worth $100,000. The district court noted that the parties came to this amount by considering factors other than the value of the litigation such as the "nuisance value of engaging in litigation involving Jones," who Safaris testified had the tendency to unreasonably increase litigation costs. Finally, the district court noted that no one, not even

8

Jones, asserted that the value of the litigation was $100,000, thus, that amount was not reflective of the value of the litigation.

On the fifth factor, whether a contract or statute makes it likely attorney fees will be awarded, the district court found that there was no evidence of such contract or statute.

After considering the five factors, the district court concluded that Jones failed to carry his burden to establish the litigation's approximate value because he did not present sufficient evidence to establish, by a preponderance of the evidence, that the approximate value of the Sligar Lawsuit was either $300,000 or $1,000,000.

Jones asserts the district court abused its discretion in denying his motion to set aside the sheriff's sale because he presented sufficient evidence that the Sligar Lawsuit had a range of values between $100,000 and $1,000,000. Jones highlights the forensic accounting report, wherein the accountant claimed Jones's interest in the gross profits of Overtime Garage LLC totaled in excess of $1.1 million. Jones argues the district court should have accepted the accountant's testimony because "she was attempting to approximate the value of unliquidated litigation without the benefit of extensive discovery and without the ability to reach out and simply interview key players such as Sligar" and the valuation was supported by Jones's complaint and his affidavit in support of a motion for preliminary injunction. Jones also points to the testimony of Safaris' attorney that he considered the nuisance value of the lawsuit to be $300,000 and argues for the first time that the district court should have concluded the $100,000 value in the settlement agreement was the approximate value of the litigation.[4] Finally, Jones argues that the district court placed improper emphasis on litigation costs because this Court's decision in *Safaris II* did not identify litigation costs as a factor the trial court should consider. Jones contends that in light of this evidence, the district court erred by holding him to the standard of exactitude that this Court disclaimed in *Safaris II*.

In response, Safaris directs us to this Court's instruction in *Safaris II* that any "finding of approximate value must be clearly articulated . . . and based on a preponderance of the evidence." *See Safaris II*, 163 Idaho at 887, 421 P.3d at 218. Safaris claims that the district court properly determined that Jones failed to meet his burden of proof, arguing the district court's decision "was due in large part to the weight afforded by the district court to the testimony of Jones's expert

---

[4] Safaris' attorney testified to initially requesting $300,000 from Sligar's attorney in settlement negotiations before later agreeing on a settlement value of $100,000.

9

witness." Safaris contends the district court acted within its discretion when it discounted Jones's expert witness and cites *City of McCall v. Seubert*, where this Court held that "[w]eighing the testimony of expert witnesses is uniquely within the competence of the trier of fact." 142 Idaho 580, 585, 130 P.3d 1118, 1123 (2006) (quoting *Rueth v. State*, 103 Idaho 74, 78, 644 P.2d 1333, 1337 (1982)).

We conclude that the district court did not abuse its discretion in denying Jones's motion to set aside the sheriff's sale. The district court's analysis focused on the deficiencies of Jones's evidence and his failure to meet his burden to establish the approximate value of the litigation by a preponderance of the evidence. Contrary to Jones's argument, the district court did not err in determining the expert testimony was incomplete and not entitled to any meaningful weight. It is a "well established rule that the opinion of an expert is not binding on the trier of fact, and provided that the trier of fact does not act arbitrarily, it may be rejected, even where uncontradicted." *Rueth*, 103 Idaho at 78, 644 P.2d at 1337. The district court articulated valid reasons for not giving the expert's opinion any meaningful weight; namely, that she admitted she required significantly more information before she could provide something more than an incomplete valuation based on minimal information from only one party. She admitted she had many more questions than answers and required "much more information." Jones's proffered evidence consisted primarily of self-serving statements, his accountant's unreliable valuation, and Safaris' attorney's opening offer when attempting to negotiate a settlement with Sligar's attorney. While this Court did say in *Safaris II* that we would not require exactitude and the process should not be onerous, we also stated that any finding of approximate value must be based on a preponderance of the evidence and that we would conduct our review with due regard for how the district court exercised its discretion under the circumstances. *Safaris II*, 163 Idaho at 887, 421 P.3d at 218. The district court did not abuse its discretion when it determined Jones failed to carry his burden to establish the approximate value of the litigation was $1,000,000 or $300,000.

It was also within the district court's discretion to consider litigation costs in its analysis. While we did not specifically identify litigation costs as a factor in *Safaris II*, we also stated the listed factors were not exclusive, would vary in each case, and that we would conduct our review with due regard for how the district court exercised its discretion under the circumstances. *Id.* at 887, 421 P.3d at 218.

10

We further note that while Jones now argues on appeal that the district court should have adopted the $100,000 value identified in the settlement agreement, Jones never argued below that the litigation was valued at $100,000. The district court did not err when it failed to identify an approximate value that was never advanced by Jones. As this Court recently explained:

> "In our adversarial system of adjudication, we follow the principle of party presentation." As such, it is presumed "that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." In other words, a court's role is to sit as a neutral arbiter, not to act as an additional advocate sifting through each party's evidence to determine the most persuasive arguments that might have been made.

*Herr v. Herr*, No. 47941, slip op. at 4 (Oct. 8, 2021) (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)).

Our decision today, however, should not be construed as holding that the settlement agreement in this case could not constitute sufficient evidence to establish an approximate value of the litigation. Rather, we simply conclude that Jones advocated two approximate values below—$1,000,000 and $300,000—and that he failed to establish either value by a preponderance of the evidence. Our holding in *Safaris II* did not require the district court to identify a value regardless of the arguments or evidence advanced by the parties, but rather held that the district court *cannot set aside a sheriff's sale* without first make a finding as to the approximate value of the litigation.

On remand, the district court did not abuse its discretion in denying Jones's motion to set aside the sheriff's sale. The district court recognized the issue as one of discretion, stating "the decision whether to set aside an execution sale lies within the trial court's discretion." Next, the district court acted within the bounds of its discretion and consistently with applicable legal standards, by applying the factors set forth in *Safaris II* to assess Jones's evidence concerning gross inadequacy of consideration. Finally, the district court's analysis demonstrates it acted reasonably, providing thorough discussion of each of the factors identified in *Safaris II*.

Given our conclusion that Jones failed to meet his burden to establish the approximate value of the litigation, we do not need to analyze whether slight additional circumstances were present and take no position on that issue.

**C. The district court did not abuse its discretion when it awarded costs and fees pursuant to Idaho Code section 12-120(5).**

Following the district court's decision granting Safaris' motion to release the tendered funds, Safaris requested attorney fees and costs pursuant to Idaho Code section 12-120(5) and I.R.C.P. 54(e), arguing that the fees were incurred during its efforts to collect the amended judgment. Jones opposed the request, arguing: (1) Safaris' claim was untimely, (2) Safaris provided no support for its paralegal fees, and (3) none of Safaris' fees were incurred during its attempt to collect the amended judgment. For Jones's third argument, he again argued that since he tendered the amended judgment on December 28, 2017, any efforts made by Safaris to retain the Sligar Lawsuit after the tender did not qualify as collection efforts.

The district court awarded Safaris reasonable attorney fees in the amount of $24,965.59 pursuant to Idaho Code section 12-120(5). The court explained, "[d]espite the judgment having been deemed satisfied, the Plaintiff was required to further litigate this matter post-satisfaction to defend against the *Motion* [to set aside the sheriff's sale] and establish its interest in the pending litigation."

Jones filed a motion for reconsideration of the order awarding attorney fees and costs, arguing Safaris' actions could not be considered collection efforts under Idaho Code section 12-120(5) because Safaris' "choice to ignore the bond" and challenge Jones's ownership of the litigation was not an effort to collect the judgment. The district court denied Jones's motion for reconsideration and explained Jones failed to present any new evidence or legal argument on reconsideration. Because it rejected those arguments in its previous order, it denied Jones's motion.

On appeal, Jones contends the district court abused its discretion in awarding fees and denying his motion for reconsideration and raises the same arguments made to the district court; namely, that when he tendered funds to the clerk, Safaris "was made whole" and was under "no obligation at that point to continue its efforts to win back the Litigation [sic]." Jones relies on *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012), for the premise that "a motion for reconsideration need not be supported by any new evidence or authority." In response, Safaris maintains that while there is no requirement that a motion for reconsideration be supported by new evidence, the moving party must demonstrate why the court's prior decision is erroneous. Safaris contends that Jones presented no new evidence, legal authority, or argument in support of his motion for reconsideration and, therefore, the district court did not abuse its discretion in denying the motion.

"The decision to award attorney's fees is within the discretion of the trial court, unless the award is based on the interpretation of a statute." *Med. Recovery Servs., LLC v. Siler*, 162 Idaho 30, 33, 394 P.3d 73, 76 (2017) (internal citations omitted). "When the award of attorney fees depends on the interpretation of a statute giving rise to that award . . . this Court exercises free review." *Id.* The district court granted fees under Idaho Code section 12-120(5), which provides:

> In all instances where a party is entitled to reasonable attorney's fees and costs under subsection (1), (2), (3) or (4) of this section, such party shall also be entitled to reasonable postjudgment attorney's fees and costs incurred in attempting to collect on the judgment. Such attorney's fees and costs shall be set by the court following the filing of a memorandum of attorney's fees and costs with notice to all parties and hearing.

I.C. § 12-120(5). Once the district court determines a party is entitled to fees under 12-120(1), (2), (3), or (4), then section 12-120(5) provides that the award of postjudgment attorney fees is mandatory. *Med. Recovery Servs., LLC*, 162 Idaho at 35, 394 P.3d at 78.

"When deciding the motion for reconsideration, the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Christopher W. James Tr., UTD Feb. 7, 1979 v. Tacke*, 167 Idaho 25, 30, 467 P.3d 389, 394 (2020). This Court reviews "the decision on a motion for reconsideration with the same standard of review utilized by the lower court." *Id.*

Here, the district court awarded Safaris reasonable attorney fees pursuant to Idaho Code section 12-120(5) and was, therefore, entitled to an award of fees for any post-judgment collection efforts. Contrary to Jones's assertion, Safaris did not take new actions to collect on the judgment following Jones's tender. Safaris' fees resulted from Jones's motion to set aside the sheriff's sale, which required it to defend its prior collection efforts and, as such, constituted a continuation of its reasonable attempts to collect the amended judgment. We affirm the district court's order granting Safaris its reasonable attorney fees pursuant to Idaho Code section 12-120(5).

**D. Safaris is entitled to an award of attorney fees and costs on appeal.**

Finally, Safaris requests an award of attorney fees on appeal pursuant to Idaho Code section 12-120(5) and Idaho Appellate Rules 35(b)(5) and 41. Safaris claims that its appeal has been a reasonable attempt to collect the amended judgment. In response, Jones claims that Safaris' request for attorney fees should be denied because when he made his tender to the clerk any and all collection efforts should have ceased. As discussed above, attorney fees are mandatory under section 12-120(5) when the court has already awarded fees under subsection (1), (2), (3), or (4),

and the fees have been incurred during a reasonable attempt to satisfy the judgment. *Med. Recovery Servs., LLC*, 162 Idaho at 34, 394 P.3d at 77. Here, Safaris has been awarded attorney fees under section 12-120(1) and, as explained above, its efforts on appeal are a reasonable attempt to defend its prior collection efforts. Because this Court is awarding fees pursuant to section 12-120(5), we do not address Safaris' request for fees under Idaho Code section 12-121. As the prevailing party on appeal, Safaris is also entitled to an award of its costs pursuant to I.A.R. 40.

## V. CONCLUSION

Based on the foregoing, we affirm the district court's orders denying Jones's motion to set aside the sheriff's sale and awarding Safaris attorney fees pursuant to Idaho Code section 12-120(5). We award Safaris attorney fees and costs on appeal pursuant to Idaho Code section 12-120(5) and I.A.R. 40 and 41.

Justices STEGNER and MOELLER and Justices Pro Tem HUSKEY and CAWTHON **CONCUR**.

14