**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13164

Non-Argument Calendar

_____

MARTIN COWEN,

an individual,

ALLEN BUCKLEY,

an individual,

AARON GILMER,

an individual,

JOHN MONDS,

an individual,

LIBERTARIAN PARTY OF GEORGIA, INC.,

a Georgia nonprofit corporation,

*Plaintiffs-Appellees-*
*Cross Appellants*,

*versus*

SECRETARY OF STATE OF THE STATE OF GEORGIA,

*Defendant-Appellant-*
*Cross Appellee*.

———————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-04660-LMM

———————————

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Georgia requires congressional candidates from third parties to collect signatures from 5% of eligible voters before they can appear on Georgia ballots. The Georgia Libertarian Party and some of its candidates and supporters have challenged this requirement. In this third round of appeals, the Libertarian Party now argues that the 5% requirement was enacted with a discriminatory purpose, plus that it should be able to supplement its Complaint with new allegations of unfair treatment. The district court disagreed, and we affirm.

**I.**

The Georgia Libertarian Party seeks to enjoin enforcement of Georgia's 5% signature requirement for ballot access for congressional races. Georgia law separates political parties—organizations with candidates that won at least 20% of the vote from the last gubernatorial race—from political bodies—those that did not. *Cowen v. Georgia Sec'y of State* (*Cowen I*), 960 F.3d 1339, 1341 (11th

Cir. 2020). Nominees of political parties automatically qualify for the general election ballot. *Id.* But nominees of political bodies need signatures from 5% of the voters in a district to run for Congress. *Id.* The Libertarian Party brought two claims: (1) that the law violated the Party's First and Fourteenth Amendment rights; and (2) that the law violated the Equal Protection Clause of the Constitution. Only the latter claim is relevant here, and the Party raised two arguments in support. *First*, it argued the law discriminated against Libertarian Party candidates for Congress. Libertarian candidates for Congress had to meet a 5% signature requirement while statewide Libertarian candidates had to meet only a 1% requirement. *Second*, it argued that the legislature enacted the 5% petition requirement with the purpose of discriminating against the Communist Party.

The precise scope of the discriminatory purpose theory was narrow. The Party's Complaint alleged that the 5% requirement "was enacted with the discriminatory purpose of preventing Communist Party candidates from appearing on Georgia's ballots." The Complaint's only allegation to support this conclusion was a 1943 news article saying that the 5% requirement sustained Georgia's Secretary of State in refusing to place a Communist presidential candidate on the ballot in 1940.

To bolster its theory, the Party presented expert testimony from Darcy Richardson. A self-described "advocate," Richardson repeatedly ran as a third-party candidate himself. His prior efforts included a campaign for the United States Senate in Pennsylvania

and a run for the Florida governorship in 2018.  Richardson lacked college education outside of two years of coursework towards a business degree, so the plaintiffs sought to qualify him as an expert on "his knowledge, skill, and experience."  Richardson's experience consisted of writing a string of self-published books.  He had written articles for newspapers.  But he had no peer-reviewed papers.

Richardson's research in this case consisted of reading the text of the statute at issue and searching several newspaper archives for articles from around 1940 to 1943.  What Richardson did not do is look at any legislative documents or Georgia Attorney General opinions—so he missed a Georgia Attorney General opinion from 1948 which discussed the purpose of the 5% requirement as preventing candidates with little following from clogging the official ballot.

Richardson's declaration emphasized that Georgia's Secretary of State had "unilaterally barred" the Communist presidential candidate from the ballot in 1940.  The Secretary of State had justified his decision by saying public policy allowed him to block candidates who sought "to overthrow our democratic constitutional form of government."  The Secretary then pursued legislation that would require candidates to file information about whether their party was "designed to overthrow our constitutional form of government."  Eventually, the legislature passed a 5% petition requirement rather than the Secretary's proposed bill.  Richardson cited a single newspaper article that said the legislation was designed to support the Secretary of State "in refusing a Communist

candidate" a place on the ballot. Richardson concluded that no "other justification for the petition requirement is apparent in the historical record," by which he meant the handful of newspaper archives and the text of the legislation. Neither Richardson's declaration nor the Complaint mentions race. Throughout the litigation, the Secretary challenged the admissibility of Richardson's testimony. But the district court avoided ruling on the motion's merits.

In the first round of summary judgment, the district court concluded that Georgia had "an important state interest" in the 5% requirement and that the law's burden was balanced by the freedom of voters "to sign as many nominating petitions" as they want. Supreme Court and Eleventh Circuit precedent on the 5% requirement made the issue of discriminatory intent moot. In *Jenness*, the Supreme Court had rejected First Amendment and equal protection challenges to Georgia's 5% requirement. *Id.* at 440–41. And we followed that approach, explaining that our caselaw "and the Supreme Court have upheld Georgia's 5% rule before." *Coffield v. Kemp*, 599 F.3d 1276, 1277 (11th Cir. 2010). Because precedent had held the law constitutional, the district court reasoned, the discriminatory intent argument was moot. The district court also found the Secretary's motion to exclude Richardson's testimony moot. The Party appealed. On appeal, this Court held that the district court should have applied *Anderson-Burdick* instead of *Jenness*. *Cowen I*, 960 F.3d at 1347. We vacated and remanded with instructions to apply the correct standard to the First and Fourteenth

Amendment claims and to consider the equal protection challenge anew. *Cowen I* at 1345–47.

Back in the district court, there were cross motions for summary judgment on all counts. The district court granted summary judgment to the Libertarian Party on the First and Fourteenth Amendment claim, finding that the law imposed "a severe burden" on the Party's rights. But the Secretary prevailed on the statewide-versus-congressional equal protection theory. In a separate order, issued nearly five months later, the district court found the discriminatory purpose theory to be moot. The district court reasoned that because the Party had obtained the relief it sought through its claim under the First and Fourteenth Amendments, it could not get additional relief through its discriminatory purpose theory. Both sides appealed. We affirmed the district court on the equal protection claim and reversed it on the First and Fourteenth Amendment claim. *Cowen v. Sec'y of State of Georgia (Cowen II)*, 22 F.4th 1227, 1236 (11th Cir. 2022). The Party did not appeal the finding that its discriminatory purpose theory was moot, so we did not consider it in the *Cowen II* appeal. *Id.* at 1231 n.2.

On remand, the district court entered final judgment for the Secretary on both claims. But the Party wanted to relitigate its discriminatory purpose theory. So it filed a motion for relief from a judgment or order. The district court granted the motion under Rule 60(b)(1) "as to the equal-protection claim asserted on a discriminatory-purpose theory."

24-13164              Opinion of the Court              7

Nearly five years into litigation, the Party sought to reopen discovery to replace its expert, Darcy Richardson. He had "disappeared without a trace." Phone calls, emails, and even colleagues had been unable to reach Richardson. The judge held the motion in abeyance and allowed the Secretary to move for summary judgment as a matter of law. The Libertarian Party filed a motion in opposition, attaching thirteen exhibits to its response. These consisted of newspaper articles, excerpts from the Georgia legislature's journal, the Communist Party platform, and several new declarations from witnesses. For the first time, the Libertarian Party argued that the discriminatory purpose behind the 1943 law was racism.

The district court was not convinced and granted summary judgment to the Secretary.

Nearly a month after the clerk entered judgment, the Libertarian Party submitted a Rule 59(e) motion to alter or amend that judgment. The district court sat on the motion. Almost eight months after the entry of final judgment, while the Rule 59(e) motion was still pending, the Libertarian Party filed a Rule 15(d) motion to supplement the pleadings. The motion sought to add a new claim based on a recently-passed law allowing political body presidential candidates to qualify for the Georgia ballot if they qualified in twenty other states. The district court denied both the Rule 59(e) motion for reconsideration and the Rule 15(d) motion to supplement.

The Libertarian Party now appeals the grant of summary judgment and the denial of the Rule 15 motion.

## II.

This Court reviews the entry of summary judgment de novo, "viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party." *McCreight v. Auburn-Bank*, 117 F.4th 1322, 1329 (11th Cir. 2024) (quotation omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review denials of leave to file supplemental pleadings under Rule 15(d) for abuse of discretion. *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1126 (11th Cir. 2022).

And we review a Rule 60(b) decision for abuse of discretion. *Willard v. Fairfield S. Co.*, 472 F.3d 817, 821 (11th Cir. 2006).

## III.

We consider whether the discriminatory purpose theory can be brought at this stage of litigation before turning to whether the district court erred in denying the motion to supplement.

### A.

We begin by noting that the discriminatory purpose theory that the Libertarian Party raises on this appeal could have been brought in *Cowen II*. If a party does not appeal a decision when it could have done so, that decision "becomes the law of the case" and the party has "waived the right to challenge that decision at a

24-13164            Opinion of the Court                9

later time."[1]  *Robinson v. Sauls*, 102 F.4th 1337, 1341 n.5 (11th Cir. 2024).  A district court may not "ignore the law of the case."  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018). We may raise the law-of-the-case doctrine sua sponte.  *United States v. Anderson*, 772 F.3d 662, 669 (11th Cir. 2014).  And this Court "may affirm on any ground supported by the record."  *Carey v. Dep't of Corr.*, 57 F.4th 985, 989 (11th Cir. 2023).

Nearly five months after the second round of summary judgment, the district court found the discriminatory purpose theory to be moot.  The plaintiff's notice of cross appeal one month later did not mention the order finding the discriminatory purpose theory to be moot.  And the plaintiff's briefing on appeal did not mention the discriminatory purpose theory.  We even noted that "the discriminatory purpose theory" was "not at issue" on appeal. *Cowen II*, 22 F.4th at 1231 n.2.

After failing to challenge the district court's decision to find the discriminatory purpose theory moot on its next appeal, the Party was procedurally barred from raising the claim again.  This situation resembles that in *Robinson*, in which the plaintiff had a § 1983 claim dismissed in the litigation and later lost on summary

---

[1] There are three limited exceptions to the law-of-the-case doctrine: "when (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."  *Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1161 (11th Cir. 2024), *cert. denied sub nom. Rutstein v. Compulife Software, Inc.*, 145 S. Ct. 1172 (2025) (quotation omitted).  None applies here.

judgment. F.4th at 1341 n.5. Robinson could have challenged the dismissal in her appeal of the summary judgment. *Id.* But she didn't. *Id.* As a result, she "waived the right to challenge that decision at a later time." *Id.* Like the plaintiff in *Robinson*, when the Libertarian Party appealed the summary judgment, it could also have challenged the district court's finding of mootness on its discriminatory purpose theory. But it chose not to, and now bears the consequences of that strategic choice.

We affirm on the ground that the judgment originally entered for the Secretary should never have been disturbed.

**B.**

The Party also challenges the district court's decision denying leave to supplement the Complaint. Litigants generally may not supplement their pleadings after a court has entered judgment. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 500 (2009). Otherwise, Rule 60 would be "swallowed whole" by Rule 15. *Id.*

In any event, denial of leave to supplement would be proper even in a prejudgment posture. Under Rule 15(d), a district court may allow supplemental pleadings on "just terms." Our precedents make "liberal allowance" for supplemental pleadings. *Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, Inc.*, 257 F.2d 162, 167 (5th Cir. 1958).[2] Rule 15(d) allows parties to add "new facts in order to

---

[2] "This Court adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981." *Sleeth v. Commissioner of Internal Revenue*, 991 F.3d

update the earlier pleading." *Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992) (quotation omitted). But district court judges do not abuse their discretion when denying a motion to supplement that arises late in litigation and raises "an entirely new theory of recovery," particularly when "discovery was already well underway" and the party can "raise the new claims in another lawsuit." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1229 (11th Cir. 2008).

Here, the request came not just after discovery, but after the entry of final judgment. The Party's motion raised a new theory of recovery: it alleged an equal protection violation because presidential candidates could get ballot access by qualifying in other states while congressional candidates still needed signatures. And as both the district court and the Party acknowledged, the claim could be made in an entirely new lawsuit. Thus, the district court did not abuse its discretion in denying the Party's motion to supplement the pleadings.

★        ★        ★

We **AFFIRM** the district court's judgment.

---

1201, 1207 n.3 (11th Cir. 2021) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).